NEW YORK, May, 1835.

Hammond
v.
Hopping.

---

## HAMMOND vs. HOPPING.

Where an *usurious security* is given *in part* for a *pre-existing valid debt*, such debt is not destroyed by the illegal security; it may still be recovered upon the strength of the original consideration, without reference to the subsequent usurious contract. But although an usurious contract contains a good consideration in fact, as where *money is actually lent* and received by the borrower, yet the *security being absolutely void*, no action can be maintained upon it; nor is it evidence of indebtedness, upon the strength of which the law will *imply* a promise on the part of the borrower to pay the amount actually received by him. The *express promise* being absolutely void, no *implied obligation* can spring from it.

If, however, the *contract is mutually abandoned*, and the securities are cancelled or destroyed, so that they can never be made the foundation of an action, and the borrower *subsequently promises* to pay the *amount actually received* by him, *such promise is legal and binding;* but as long as the usurious contract remains in force, unrescinded by the parties, a promise to repay the sum actually borrowed cannot be enforced.

Where there is an usurious agreement upon the loan of money, it is immaterial whether the unlawful excess be *actually paid,* or only *promised to be paid;* in either case the contract is void.

Where the *pleadings* give notice to a party to be prepared to produce a particular instrument at the trial, if necessary to contradict the evidence of his opponent, *notice to produce the instrument* is not necessary.

Notice to produce a paper, given after the commencement of a circuit, and four days previous to the trial, where the residence of the plaintiff is within twelve miles of the place of trial, is sufficient.

And *it seems* that when the paper is so near to the place where the court is sitting, that it can be obtained without delaying the trial, and without material inconvenience to the party, a *notice given after the trial has commenced* would be deemed sufficient.

So where, from the nature of the instrument, or from its connection with the cause, it may fairly be presumed to be in the possession of the party or his counsel in court, *it seems* he would be held bound to produce it

upon demand in court, or evidence of its contents would be received, unless the fact of its being in court was denied under oath.

THIS was an action of *assumpsit*, tried at the Cayuga circuit, in December, 1832, before the HON. DANIEL MOSELEY, one of the circuit judges.

The plaintiff declared on a note given to him by the defendant, for $400 with use, dated 11th June, 1828. The declaration also contained the common money counts. The defendant pleaded the general issue, and gave notice that he would prove, on the trial, that the note declared on was given in pursuance of an *usurious* contract, whereby it was agreed, that he should pay to the plaintiff at the rate of *ten per cent. per annum*, for the loan of $400 for six months ; that he accordingly made the note declared upon, in which interest was reserved at the rate of *seven per cent. per annum*, and that for the balance of the *ten per cent.* he made and delivered to the plaintiff a note for *six dollars ;* thus securing to the plaintiff *twenty dollars* for the use of $400 for sixth months. On the trial, the making of the note for $400 was proved, and the plaintiff rested. The defendant then proved that the note was given upon a loan of $400, made to him by the plaintiff, and that he agreed to pay interest therefor at the rate of *ten per cent. per annum.* He also offered to prove that at the time of the making of the note for $400, he gave a note of six dollars to the plaintiff, for the *extra interest.* The plaintiff objected to such proof, unless the defendant produced the note, or showed that notice had been given to him to produce it. It was then proved that since the commencement of the circuit, and *four days* previous to the trial, notice to produce the note had been given to the plaintiff, whose residence was about twelve miles from the place of trial. It was objected that the note was not given in season, and the judge sustained the objection, and excluded the testimony. The defendant further proved, by one Corey, that in the winter of 1829, the plaintiff told the witness that he had let the defendant have $400, and had charged him only *ten per cent.* interest for the first six months, but if the defendant kept the money any longer, he must pay him *fourteen per cent.* The plaintiff then proved that in the spring of 1830, he sent an

agent to demand of the defendant security for the payment of the $400, and the defendant then acknowledged that he had received the $400 from the plaintiff, and meant to pay him as soon as he could ; but declined giving a mortgage on his farm. Nothing was then said about interest, except the interest on the $400 note. The judge charged the jury, that if the note for $400 was given upon an agreement by the defendant to pay ten per cent. interest for the loan of that sum, or any other rate exceeding seven per cent. per annum, the note was void ; that the evidence of the giving of the other note to consummate the usurious agreement was defective, for the want of its production ; that the defendant, however, relied upon the admission made by the plaintiff to Corey, of the terms of the loan ; but in considering such testimony, he instructed them not to take into consideration what had been said in regard to the other note ; that the plaintiff relied for recovery upon the subsequent promise of the defendant to pay the debt ; and he instructed the jury that if, from the testimony of Dr. Merriman, (the agent who called for security,) they should be satisfied that the defendant had subsequently promised to pay the debt, the loaning of the money was a sufficient consideration to uphold the promise for the sum actually borrowed. The jury found for the plaintiff the amount of the note, with lawful interest. The defendant moves for a new trial.

*J. A. Spencer*, for the defendant.

*M. T. Reynolds*, for the plaintiff.

*By the Court*, SUTHERLAND, J. The judge erred in excluding evidence of the note for $6, alleged to have been given for the extra interest, at the same time when the principal note, on which the suit is brought, was given. The defendant, in the notice attached to its plea, set forth minutely all the particulars of the transaction ; and, among other things, stated that the usurious interest was embraced in this six dollar note, setting out its date and tenor. This brings the case within the principle that where the form of the action, or of

NEW YORK,
May, 1835.

Hammond
v.
Hopping.

the pleadings, gives the party notice to be prepared to pro-
duce a written instrument, no other notice to produce it is
necessary. The case of *Hardin* v. *Kretsinger,* 17 *Johns. R.*
293, is precisely in point. That was an action of covenant
upon a sealed contract, whereby the plaintiff agreed to sell
and convey to the defendant a certain lot of land ; in consid-
eration of which the defendant covenanted to pay the plain-
tiff $1600 : $400 to be paid down in money, and $150 at the
same time in obligations, and the residue to a third person.
The breach alleged was, the non-payment of the $150 in ob-
ligations. The defendant alleged that they had been deliver-
ed and accepted by the plaintiff, and offered to prove it. The
plaintiff's counsel objected to giving evidence of the receipt of
the notes by the plaintiff, without a notice to produce them.
The objection was overruled by the judge, and upon a motion
for a new trial, the decision of the judge upon this point was
sustained. Ch. J. Spencer observed, that the case did not
state the nature of the pleadings ; but as the evidence was
not objected to on the ground that it was not admissible under
the pleadings, it was to be intended that the defendant either
pleaded or gave notice that he would give in evidence that he
had delivered to the plaintiff obligations to the amount of $150
in pursuance of the contract, and which were accepted by
him ; and that then the principle applied, that where the form
of the action, or of the pleadings, gives notice to the opposite
party to be prepared to produce a particular instrument, if
necessary to contradict the evidence of the other party, notice
to produce the instrument is not necessary, as was held in
the *People* v. *Holbrook,* 13 *Johns. R.* 92. See also *Phil. Ev.*
390, 1. And he remarked, that as the form of the pleadings
gave the plaintiff notice that the defendant alleged that he
had received and had in his possession obligations to the
amount of $150, he was bound, if he would deny or falsify
the allegation, to have come prepared to produce them. The
two cases are precisely analogous, except that here there is
no room for presumption, as to the pleadings and notice, for
they are set out at length.

But if notice to the plaintiff to produce this note had been
necessary, that given during the circuit was sufficient, ac-

cording to the facts appearing upon the case. The party is to have reasonable notice, according to the circumstances of each particular case. Where the paper is in court, or so near the place where the court is sitting, that it can be obtained without delaying the trial, and without material inconvenience to the party, a notice given after the trial has commenced is sufficient; and where, from the nature of the instrument, or from its connection with the cause, it may fairly be presumed to be in the possession of the party or his counsel in court, he ought affirmatively to deny the fact, or the notice should be held good. Such I think was this case; from the connection of the six dollar note with the principal note on which the suit was brought, it probably was in the possession of the attorney or the party in court; and he was bound to produce it, or receive evidence of its contents, unless he would deny the fact under oath. This was not done. Neither a party nor his attorney is bound to leave the court and go for papers or books at a distance, *Utica Ins. Co.* v. *Shadwell*, 3 *Wendell*, 300; and the sufficiency of the notice must be, to a considerable extent, a matter of discretion with the judge, depending upon the particular circumstances of each case.

As to the charge of the judge, in the course of the trial the plaintiff proved, by Titus Merriman, that he, the witness, as the agent of the plaintiff, called on the defendant, in the spring of 1830, for the purpose of obtaining security for the note Hammond held against him. The defendant was unwilling to give a mortgage of his farm; but in the course of conversation in relation to the note, acknowledged having received the $400, and said he meant to pay it as soon as he could; that he had never denied the debt, and meant to pay it, and did not blame the plaintiff for wanting security. The defendant had previously proved, by Calvin Corey, after the evidence in relation to the six dollar note had been rejected, that he heard the plaintiff say that he let the defendant have $400, and only charged him *ten* per cent. for the first six months. This was about the time the first six months were out. The plaintiff said if the defendant kept it any longer, he must pay *fourteen per cent.* This was the fore part of the

winter, after June, 1828, ( when the note bears date. ) He said it was done at Syracuse, and that Enos D. Hopping did the business. The judge charged the jury that if the note on which the suit was brought was given upon an agreement to loan $400 at ten per cent., or any other sum more than seven, the note was void, and the action could not be sustained ; that the evidence (of usury) arising from the six dollar note said to have been given at the time, to consummate the corrupt or usurious agreement was deficient, from the non-production of that note ; but that the defendant relied upon the subsequent admission made by the plaintiff of the terms of the loan, as testified to by Corey. In considering Corey's testimony, they would not take into consideration what had been said in regard to the other note ; and that the plaintiff relied upon a subsequent promise of the defendant to pay the debt. And he advised the jury, that if, from the testimony of Doctor Merriman, they should be satisfied that the defendant had subsequently promised to pay the debt, the loaning of the money was a sufficient consideration to uphold the promise for the sum actually borrowed. Excluding from consideration all reference to the six dollar note, the evidence in relation to the usury stands thus : 1. The testimony of Enos D. Hopping, who was present when the loan was made, that the plaintiff asked 14 per cent. interest, but finally agreed to take 10 per cent. ; but that the defendant actually received from the plaintiff $400, the face of this note ; 2. The admission of the defendant himself that he received from the plaintiff $400, the face of the note ; and 3. The testimony of Corey that the plaintiff admitted that he let the defendant have $400, and only charged him 10 per cent. for the first six months. Upon this evidence, I think the jury might well have found the note usurious. The plaintiff's admission to Corey, standing by itself, is abundantly sufficient to establish the usury ; and the fact that the defendant actually received $400, the face of this note, is in no respect inconsistent with the plaintiff's admission that the transaction was usurious. In order to make out usury, it is not necessary to show affirmatively how the excess above lawful interest was paid or secured. In this case we are left entirely at liberty to pre-

sume that it was actually refunded, or secured by a separate

instrument. The plaintiff admitted that he charged 10 per cent. upon the loan, and it is entirely immaterial whether the unlawful excess was actually paid, or only promised to be paid; it was all one transaction or contract, and the whole was void. The jury, however, may have thought otherwise; and it is impossible to say whether they found for the plaintiff on the ground that the note was infected with usury, or upon the strength of the defendant's subsequent promise to pay it, admitting the contract to have been originally usurious.

The statute against usury renders any contract infected with it utterly void; but if the usurious security was given in part for a pre-existing valid debt, that debt is not destroyed by the illegal security. It may still be recovered upon the strength of the original consideration, without any reference to the subsequent usurious contract. *Rice* v. *Welling*, 5 *Wendell*, 597, *and the authorities there cited.* In every usurious contract there is a good consideration in part of the promise to fulfil it. The borrower actually receives the money of the lender, yet the security being absolutely void, no action can be maintained upon it; nor is it evidence of an indebtedness, upon the strength of which the law will *imply* a promise, on the part of the borrower, to repay the amount actually received by him.. The express contract being absolutely void, no implied obligation can spring from it. The lender cannot waive or abandon the usurious agreement, so far as it is illegal, and enforce it for the residue. The contract is one; no matter what the nature or number of the securities may be, all are void. Although one security may be given for the amount actually loaned, and another for the usurious excess, the one is as void as the other. The contract cannot be broken up and resolved into its original parts or elements, so as to get rid of the illegal taint, without the consent of both parties. But if it is mutually abandoned, and the securities are cancelled or destroyed, so that they can never be made the foundation of an action, and the borrower subsequently promises to pay the amount actually received by him, such promise is legal and binding. It is founded upon an equitable and moral obligation, which is sufficient to support an express promise.

NEW YORK, The money actually lent, when legally separated from the
May, 1835. usurious premium, is a debt in equity and conscience, and
Hammond ought to be repaired. This is the settled doctrine of a court of
v. equity; for there the borrower will not be relieved from an
Hopping. usurious contract, except on the condition of refunding the
money lent, with legal interest, 2 *Vesey,* 567. 2 *Bro. Ch.
Cas.* 649. 1 *Johns. Ch. Cas.* 367. But as long as the usu-
rious contract remains in force, and unrescinded by the par-
ties, a promise to repay the sum actually borrowed, or any part
of it, cannot, I apprehend, be *legally,* binding on the borrow-
er. It is but a promise to perform *pro tanto* the original agree-
ment, every part and parcel of which is infected with usury.
It is well settled, in relation to the doctrine of usury, that a
change of the securities does not vary the contract between
the original parties. Thus if the usurious security be a
promissory note, that note may be renewed again and again,
and it will still remain usurious.

Suppose, then, (which is alleged to have been the fact in
this case,) that one note is given for the money actually loan-
ed, and another for the usurious premium, and these are
taken up and new notes given in their stead —it will not be
contended that the original character of the transaction is
changed. Both notes are still usurious and void; and yet
here is a new express promise in writing to pay the amount
actually borrowed. It will hardly be contended that a mere
verbal promise to pay it, would be of greater legal obligation.
The difficulty is, as has been remarked, that the taint of usu-
ry pervades every part of the transaction, (the premium note
no more than the other;) and until it is purified from that
infection, by a voluntary surrender and acceptance of the usu-
rious security, or it is otherwise legally annulled, every prom-
ise to pay the original consideration, or any portion of it, is
but a promise to perform an usurious contract, and is utterly
void. It will accordingly be found, that in all the cases where
the new promise has been held to be binding, the original
usurious contract was either surrendered or annulled, and the
new promise was subsequently made to pay the amount ac-
tually received. Thus, in *Wright* v. *Wheeler,* 1 *Campb. N. P.*
165, *note,* the plaintiff, in 1791, lent the defendant £1000, for

which the defendant gave his bond, with lawful interest. NEW YORK, May, 1835.
The defendant also agreed to give the plaintiff a salary of £50 a year, as a clerk in his brewery. It was not intended Hammond v. Hopping. that the plaintiff should perform any service there, but the salary was a mere shift to give the plaintiff ten per cent. interest for his money. In 1793, one year's salary having been paid, the parties agreed that it should be deducted from the principal, the deed securing the salary be cancelled, and a new bond given for the remaining principal, with five per cent. interest, which was accordingly done; and an action having been brought upon the bond, the defence of usury was set up. But Lawrence, J., before whom the cause was tried, held, that as the usurious contract had been entirely abrogated by the parties, the second bond was not made to assure the performance of that contract; that the parties had rectified the error they had committed, and substituted for an illegal contract one that was perfectly fair and legal—to the enforcing of which there was no objection. It will be observed, that here the usurious premium having been paid was actually refunded; and if it had not been, it is very clear that the error could not have been said to have been rectified, and that the last bond would have been held as usurious as the first. So in *Barnes and others* v. *Headley & Conway*, 2 *Taunt.* 182, which was an issue out of chancery, the usurious securities given for a loan were destroyed by the mutual consent of the parties, and a new account was stated, excluding all usurious interest; which the defendant acknowledged to be due to the plaintiff, and promised to pay. The question submitted to the judge was, whether the plaintiff could recover the balance thus acknowledged, on the strength of the new promise. After two very elaborate arguments by counsel, it was held that the plaintiffs were entitled to recover. So in *Earl* v. *Mahon*, 19 *Johns. R.* 147, the plaintiff lent the defendant certain sums of money, for which the defendant gave a bond and warrant of attorney, in which bond was included usurious interest. A judgment was entered upon the bond and warrant of attorney, which was subsequently set aside on motion, on the ground of usury. The defendant afterwards

NEW YORK, promised to pay the plaintiff the original sum actually borrow-
May, 1835
ed, but not the usurious interest.   On this promise the suit
Hammond   was brought.   At the trial, the plaintiff produced the original
v.
Hopping.   securities which had been given by the defendant, and offer-
ed to deliver them up to be cancelled.   It was contended, on
the behalf of the defendant, that the new promise was not
binding, because the usurious securities were not then sur-
rendered, and were not offered to be surrendered until the
trial.   To this it was answered by Judge Spencer, who de-
livered the opinion of the court, that the defendant having
procured the judgment entered on the bond to be set aside, on
the ground that the bond was void for usury, he could not be
permitted to say that it was still a subsisting instrument.   He
had concurred with the court in pronouncing it void, and the
plaintiff admitted it to be so, and produced it in court, with
an offer to cancel it.   The new promise was made after the
bond had thus been pronounced void.   *Vide* 6 *East*, 241.
Upon the main question, whether the new promise was sup-
ported by a good consideration, it was held that the money
lent, was a debt, in equity and conscience, which would sup-
port an express promise to pay it, after the usurious contract
had been rescinded, and the security delivered up and cancel-
led.   The decision was put upon the authority principally of
*Barnes* v. *Headley, and the cases their cited.* I have met with
no authority which countenances the idea that a promise to
pay the amount actually received by the borrower, made
while the original usurious contract remains uncancelled, is of
any legal force or obligation, and can be made the foundation
of an action.   The proposition seems to me to be at war with
the fundamental principles applicable to the doctrine of usury.

In the case now under consideration, there is no evidence
that the original contract, whatever it may have been, had
been abandoned or modified by the parties, so as to get rid of
the usury, if any, which infected it.   The judge therefore
erred in charging the jury, that if they should be satisfied
that the defendant had subsequently promised to pay the
debt, the loaning of the money was a sufficient consideration
to uphold the promise for the sum actually borrowed.   He
should have instructed them, that if they found the original

contract to have been usurious, the subsequent promise of the defendant to perform it, or to pay any portion of it, (it now having been abandoned or rescinded by the parties,) was but a promise to perform an usurious agreement, and was as illegal as the original undertaking.

On all these grounds, therefore, a new trial must be granted.