Nov. Term,
1861.　　　　　SILVERS *v.* THE JUNCTION RAILROAD COMPANY.

SILVERS
v.
THE
JUNCTION
RAILROAD CO.

Suit to recover certain real estate, which the plaintiff had been induced to subscribe to the stock of the company, through the false and fraudulent representations of her agent. The complaint averred that the plaintiff was ready and willing, and offers to bring said stock into Court, to be disposed of in such manner as the Court may direct. The Court below, on motion of the defendant, ordered the plaintiff to furnish the defendant with inspection of the certificates of stock by him subscribed, the motion being founded on the pleadings alone, and there being no evidence of notice to the plaintiff to produce. For the failure of the plaintiff to comply with this order, the cause was dismissed, without prejudice.

*Held,* that §§ 305 and 306 of the Code (2 R. S., p. 97), relate to papers which the adversary party desires to use in evidence, and not to papers of which a mere inspection is demanded, and which are set forth or referred to in the pleadings.

*Held,* also, that at common law the rule is, that where the form of action, or the pleadings, gives the party notice to be prepared to produce a written instrument, no other notice to produce it is necessary; and §§ 305 and 306, *supra,* were not intended to change this rule.

*Held,* also, that §§ 305 and 306, *supra,* construed with § 363 (2 R. S., p. 120), authorize the Court, for disobedience of an order to produce papers, either to "allow parol evidence to be given of their contents," or "to exclude the evidence, and punish the party refusing," or, to dismiss the suit without prejudice.

*Friday,*
*November 29.*

APPEAL from the *Hancock* Circuit Court.

DAVISON, J.—*Silvers,* who was the plaintiff, brought this action against the railroad company, alleging in his complaint, that in *September,* 1853, he was induced by the false and fraudulent representations of said company, made through her agent, one *Edwin McArthur,* to subscribe 650 shares of her capital stock; and, in payment therefor, to convey to her certain real estate, which is described in the complaint, and which was then, and still is, of the value of $32,561. The representations of which the plaintiff complains, as being false and fraudulent, are thus alleged: 1. That said company, by her agent, represented such capital stock to be worth 90 cents on the dollar, and that if the plaintiff would subscribe, he would receive dividends on his stock as soon as the railroad was finished, and that the same would be finished within two years. 2. That the *Hamilton and Dayton Railroad*

had in the *Junction Railroad Company*, stock, then paid for, to the amount of $200,000. 3. That said railroad, to be established by the company, would be a through road from *Indianapolis* to *Cincinnati*. It is averred that the plaintiff, on *January* 1, 1855, when he discovered that said representations were false and fraudulent, applied to the president and directors of the company, then in session, and offered to relinquish to them the stock, by him subscribed as aforesaid, and demanded a reconveyance of said land, but they refused, &c.; and that *he is ready and willing*, and offers to bring the same stock into Court, to be disposed of, when, and in such manner as the Court may direct. The relief prayed is, that the conveyances by him made to the *defendant be set aside*, and that the lands described be reconveyed, &c., and for general relief, &c. Defendant demurred generally to the complaint, and severally to the alleged fraudulent representations; but her demurrers were overruled, and she excepted.

The record contains a bill of exceptions, which shows that the defendant, upon the overruling of the demurrers, viz., on *August* 13, 1856, moved the Court for an order on the plaintiff, directing him to furnish the defendant with the inspection of the certificates of the stock by him subscribed, "by *Friday* the 15th of the same month, in the afternoon;" which motion was founded on the pleadings alone, (there being no evidence of notice to the plaintiff to produce the certificates,) and was, on said pleadings, allowed, and such inspection ordered. And afterward, on *Friday* evening, *August* 15, the defendant moved that the plaintiff then be required to comply with said order, and the plaintiff failing to comply, and showing no reason against complying, the Court thereupon, on the defendant's motion, and for such non-compliance alone, dismissed the suit, without prejudice, &c., and rendered final judgment against the plaintiff.

The errors assigned by the appellant, are as follows: 1. The Court erred in making the order for inspection, &c. 2. It was error to dismiss the suit, on account of his non-compliance with the order. And, for cross error, the appellee assigns the following: "The Court erred, in overruling

Nov. Term,
1861.

SILVERS
v.
THE
JUNCTION
RAILROAD Co. the demurrers to the complaint. The appellant, in support of his assignments of error, refers to §§ 305 and 306, of the Practice Act. These sections provide, 1. That the Court, or judge thereof, may, upon motion, compel by order, either party to produce, at or before the trial, any book, paper or document, in his possession or power; the order may be made, upon application of either party, upon reasonable notice to the adverse party, or his attorney. If not produced, parol evidence may be given of their contents. 2. The Court, or judge thereof, may, under proper restrictions, upon due notice, order either party to give the other, within a specified time, an inspection, and a copy of any book, or part thereof, paper or document, in his possession, or under his control, containing *evidence* relating to the merits of the action, or the defense therein; if compliance with the order be refused, the Court, on motion, may exclude such evidence, or punish the party refusing, or both. 2 R. S., pp. 97, 98. If the sections thus recited apply at all, to the question under discussion, the ruling of the Court cannot be maintained, because the Court is not authorized to grant the order contemplated by either section, in the absence of proof that notice had been served on the adverse party. It is, however, contended, that these sections relate to papers which the adversary party desires to use in evidence, but not to papers of which a mere inspection is demanded, and which are set forth, or referred to, in the pleadings. We are inclined to favor this construction. At common law, the rule is, that "where the form of action, or the pleadings, gives the party notice to be prepared to produce a written instrument, no other notice to produce is necessary." *Hammond* v. *Hopping*, 13 Wend. 505; *Hardin* v. *Kretsinger*, 17 Johns. 293; 2 Phil. Ev. 4 Am. Ed. p. 539, note 461. The enactments in question, were not, in our judgment, intended to change the common law rule. As has been seen, the plaintiff, in his complaint, after alleging a tender of his railroad stock to the defendants, and their refusal to rescind the contract, says, "that he is ready and willing, and offers, to bring the same stock into Court, to be disposed of when, and in such manner, as the Court may direct." Now, as the plaintiff had thus

shown himself ready to place the stock at the disposal of <span>Nov. Term,</span>
the Court, there seems to be no reason why the order for its <span>1861.</span>
production, was not, of itself, sufficient notice to produce <span>SILVERS</span>
it.  This, it seems to us, is not a case in which actual notice <span>v.</span>
<span>THE</span>
in writing to produce papers is required, because, here, the <span>JUNCTION</span>
certificates of stock, when produced, were not intended to <span>RAILROAD CO.</span>
be used as evidence, but simply to allow the defendants an
inspection of their contents.  And the plaintiff having, in
this instance, offered no excuse for his non-compliance, other
than the want of such notice, it must be intended that the
certificates were, at the time designated in the order, in his
possession, and that he was then ready to produce them.

The second error assigned, relates to the action of the
Court, in dismissing the suit.  Sections 305 and 306, to which
we have referred, point out the consequences of failing to
comply with an order of the Court, made under them.
These provisions, as we have seen, do not authorize a dis-
missal of the suit.  But there is another section, which says,
"An action may be dismissed without prejudice, by the
Court, for disobedience, by the plaintiff, of an order con-
cerning the proceedings in the action."  2 R. S., § 363, p. 120.

Now, the three sections thus referred to, are not in con-
flict, and may be so construed that each may stand and be
effective.  And this being done, the result is, that the Court
may, for disobeying an order to produce papers, &c., allow
'parol evidence to be given of their contents," or may
"exclude the evidence, or punish the party refusing," or,
the plaintiff having disobeyed the order, his suit may be
dismissed, without prejudice.  If this construction be cor-
rect, and we think it is, the Court, in its dismissal of the
suit, committed no error.

As the judgment in this case must, over the appellant's
assignments of error, be affirmed, the cross error will not be
noticed.

*Per Curiam.*—The judgment is affirmed, with costs.

*D. McDonald,* for the appellant.

*Caleb B. Smith,* for the appellee.