OSGOOD *et al.*, receivers, v. TOOLE *et al.*

*Insurance company — premium notes — construction of charter — Evidence.*

The charter of an insurance company allowed it to take security notes in advance of premiums, and provided that "as between the makers and the company they shall be liable . . . . . for losses and liabilities of the company after the cash capital and other resources of the company shall have been first exhausted." In an action by the receiver of the company on a " security note," *held*, (1) that the word " exhausted " in the charter did not mean " actually applied to the extinguishment of liabilities," but that the resources were " exhausted " when the losses were concededly greater than the amount of the resources; (2) that the note could be recovered upon, notwithstanding it was given in renewal of a note which was payable at a longer period than the charter allowed, the note in suit not being objectionable on that ground; (3) that the company and the maker of the note did not stand in such a relation of principal and surety as would vitiate the note by subsequent changes in the mode of doing the business of the company, not affecting the contract contained in the note; and (4) that the testimony of the book-keeper and secretary of the company, and its cashier, who was clerk of the receiver, was competent as to the condition of the affairs of the company at the time of the appointment of the receiver.

EXCEPTIONS ordered to be heard in the first instance at General Term. The verdict was in favor of plaintiffs. This action was brought by George A. Osgood and Cyrus Curtiss as receivers of the Columbian Insurance Company, upon two promissory notes given to the company. The leading facts are stated in the opinion. The notes were given as " security " notes, and the makers of such notes were entitled, by the charter of the company, to dividends in script from the surplus profits after the payment of certain dividends to the stockholders. After the notes in suit were given, the company altered its rates and passed a resolution to " return in cash, at the end of each fiscal year, fifteen per cent of all premiums paid and earned during the year in lieu of script, at the option of the dealer." The defendants claimed that this change in the mode of doing business rendered the notes void as to them.

*A. R. Dyett*, for defendants.

*D. Field*, for plaintiffs.

DAVIS, P. J. This case comes here upon exceptions ordered to be heard in the first instance at general term.

The plaintiffs are receivers, duly appointed, of the assets and property of the Columbian Insurance Company. The action is brought upon two promissory notes, one of which is dated the 11th day of December, 1861, for $840, payable to the order of the Columbian Insurance Company seven months after date ; the other, dated the 11th of July, 1861, for $930, payable to the order of the said company seven months after date.

The plaintiffs claimed, and the jury, under the charge of the court, have found, that the notes were given as security notes in advance of premiums, with intent that they should be held and owned by the company, under the provisions of its charter. The charter provided, in respect of such notes, that " they shall be drawn to the order of the company, and made payable within twelve months from date ; as to third parties, they shall be deemed the absolute property of the company, and may be used for the payment of losses and liabilities, and for any other purpose connected with the business of the company ; and, when negotiated and in the hands of such third parties, shall not be subject to any equitable claim or offset as between the makers and the company, whether existing at the time of their negotiation or accruing afterward ; as between the makers and the company they shall be liable merely to the extent of the premiums written upon them, and for losses and liabilities of the company after the cash capital and other resources of the company shall have been first exhausted."

The first exception arises upon the ruling of the judge at circuit, allowing the testimony of the book-keeper and secretary of the company, and also of the cashier of the company, who was clerk of the receivers, as to the condition of the affairs of the company at the time of the appointment of the receivers. The objections were, that the evidence was incompetent, that the witness was not shown to have such knowledge upon the subject as would authorize him to state, and that an adjustment and admission of liabilities by the receivers were not evidence of their existence as against the defendants. Neither of these objections was well taken. It was clearly competent to show the extent of liabilities and the amount of assets, as bearing upon the question of the exhaustion of cash capital and resources under the charter. The witnesses were possessed of the requisite knowledge to answer the questions put to them respect-

ively, and they answered to facts within their knowledge; and lastly, the adjustment of liabilities by the receivers, who are officers of the court, is *prima facie* evidence of the existence of such liabilities, when suits are brought to recover upon premium or security notes. The objection was not pointed to the non-production of the papers showing the official adjustment by the receivers. These witnesses showed that the adjusted liabilities of the company were about $2,700,000, and the unadjusted about $500,000 or $600,000; that the assets were between $400,000 and $500,000, exclusive of what were called the Alabama claims, which are stated at about $700,000, the latter being as yet unsettled. These facts showed that it was not possible for the assets of the company to pay a dividend to creditors beyond thirty or forty per cent, even if the Alabama claims should be recovered in full. Upon this state of facts the learned judge charged the jury, " that if the cash capital and other resources were substantially exhausted, and it is apparent that there is not the slightest shadow of doubt that the assets of the company are not sufficient to meet the amount of the losses, then the representatives of the company would have the right to call upon the makers of these security notes to respond." To this part of the charge there was an exception. We think the charge was quite as favorable to defendants as they were entitled to. The word *exhausted,* as used in the charter, does not mean actually applied toward the extinguishment of liabilities. The cash capital and other resources may properly be said to be exhausted when the losses, which they are held to meet, are concededly greater than their amount. It was in that sense the word was used. The construction claimed by the defendants would require that every asset should be first reduced to money and then paid out in full before the security notes could be enforced, and the result would be, in this case, that the creditors would be postponed till the end of the seemingly interminable contest in congress, whether the money recovered from Great Britain, under the treaty, shall be equitably applied to the claims of insurance companies like those in the hands of plaintiffs, or arbitrarily confiscated by the *brutum fulmen* of the government. The defendants also insist that the notes in suit were void because given in renewal of notes payable " twelve months after date," instead of " within twelve months." It was held in *Osgood* v. *Toplitz,* 3 Lans. 184, that this departure, in form, from the language of the charter, was fatal to the validity of the security notes.

We are not driven to show that that decision was unsound because this case is not within its facts. The notes in suit are payable at seven months after date, and therefore *within twelve months ;* and the fact that one of them was given in renewal of a note which was payable twelve months after date, is not material, because it would be the duty of the court, for the protection of the creditors of the company, to hold that the new note was given to cure the inadvertent error of the first one. A note given in place or renewal of one absolutely void by statute, which excludes the vice that destroyed the former, may be enforced. *Hammond* v. *Hopping*, 13 Wend. 505; *Goulding* v. *Davidson*, 26 N. Y. 609; *Brackett* v. *Barney*, 28 id. 338.

There was no such relation, in our judgment, of principal and surety between the company and the defendants as vitiated the obligations of the latter by the changes made by the company in the mode of doing its business, under the resolution of August, 1861. It was no change in the contract of defendants, nor did it operate to effect one; and although this note was security for creditors in certain events, yet it was not in the nature of the obligation of surety, whose rights are *strictissimi juris*, and who, upon any change of the terms of his liability, without his own consent, may always say, " *non hæc fœdera veni.*" To apply that rule to notes given as premium or security notes, under the charters of the insurance companies, would inject a virus, fatal to all protection for their creditors. We think the plaintiffs are entitled to judgment upon the verdict.

DANIELS and WESTBROOK, JJ., concurred.

*Judgment for plaintiffs.*