UNION TRUST CO. OF ROCHESTER v. OLIVER et al.

(Supreme Court, Appellate Division, Fourth Department. March 5, 1913.)

1. CORPORATIONS (§ 123*)—CERTIFICATE OF STOCK—BLANK ASSIGNMENTS.

Where a purchaser of a voting trust certificate failed to fill his name in a blank assignment and power of sale to him, and intrusted it to the seller to have the stock transferred on the trustees' books, he clothed the seller with the indicia of ownership, and one who in good faith and with due care loaned money on the faith of such apparent authority will be protected, although such misappropriation amounted to larceny.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 481, 491, 507–512, 537, 539–546, 618; Dec. Dig. § 123.*]

2. CORPORATIONS (§ 123*)—CERTIFICATES OF STOCK—BLANK ASSIGNMENTS—PLEDGES.

In an action to recover money loaned by a pledgee of stock, evidence held to show that the pledgee acted in good faith and prudence in making the loan on the faith of a voting trust certificate indorsed in blank by the party to whom it was originally issued.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 481, 491, 507–512, 537, 539–546, 618; Dec. Dig. § 123.*]

McLennan, P. J., dissenting.

Appeal from Special Term, Monroe County.

Action by the Union Trust Company of Rochester against Frederick W. Oliver and another. Judgment (77 Misc. Rep. 652, 137 N. Y. Supp. 525) for defendants, and plaintiff appeals. Reversed.

Certain stockholders of the Rochester & Lake Ontario Water Company, of whom R. A. Adams was one, entered into an agreement in writing with certain persons called trustees, whereby they agreed to transfer their shares

of stock to the trustees and to receive in exchange therefor so-called "voting trust certificates"; the stock to be held by the trustees under certain terms and conditions therein stated. The shares of stock were transferred and the voting trust certificates received by the shareholders accordingly. The certificate received by Adams, over which this controversy arises, is in the following form:

"This certifies that on the 1st day of July, 1915, R. A. Adams will be entitled to receive a certificate or certificates for one hundred full-paid shares of one hundred dollars ($100) each in the capital stock of the Rochester & Lake Ontario Water Company, and in the meantime to receive payments equal to the dividends, if any, collected by the undersigned voting trustees upon a like number of such shares of capital stock of said company standing in their names until the 1st day of July, 1915.

"The voting trustees shall, until that date possess and be entitled to exercise all rights of every name and nature, including the right to vote in respect of any and all such stock; it being expressly stipulated that no voting right passes to the holders hereof by or under this certificate or by or under any agreement, express or implied.

"This certificate is issued pursuant to the terms of an agreement in writing dated July 1, 1910, made and entered into between stockholders of said company and said voting trustees, which agreement is on file with the Rochester Trust & Safe Deposit Company, of Rochester, New York.

"This certificate is transferable only on the books which shall be kept for that purpose by said voting trustees, by the registered holder hereof, either in person or by attorney duly authorized according to rules which shall be established for that purpose by said voting trustee and on surrender hereof; and, until so transferred, said voting trustee may treat the registered holder as owner hereof for all purposes whatsoever, except that delivery of said certificates hereunder shall not be made without the surrender hereof.

"This certificate is not valid unless signed by the duly authorized agent of the voting trustees and also countersigned and registered by the Rochester Trust & Safe Deposit Company of Rochester, New York, as registrar.

"In witness whereof, said voting trustees have caused this certificate to be signed by their duly authorized agent this 15th day of September, 1910.

　　　　　　　　　　　　　　"Henry W. Brewster,
　　　　　　　　　　　　　　"Charles E. Orvis,
　　　　　　　　　　　　　　"Andrew H. Brown,
　　　　　　　　　"By their agent, Merton E. Lewis.

"Countersigned and registered this 20th day of September, 1910, one hundred shares, Rochester Trust & Safe Deposit Co., Registrar. R. Watson, Secretary."

Adams sold his stock to George K. M. Clarke, and the defendant Oberg purchased the same from Clarke. Clarke delivered the certificate to Oberg, with the assignment and power to transfer the same indorsed thereon, executed by Adams, leaving the name of the assignee blank, and which was in the following form (indorsement):

"For value received hereby sell, assign and transfer the within voting trust certificate unto......and do hereby irrevocably constitute and appoint...... to transfer this certificate on the books of the voting trustees by whom this certificate was originally issued, with full power of substitution in the premises.

"Dated Oct. 11, 1910.　　　　　　　　　　　　　　R. A. Adams.

"In the presence of Geo. K. M. Clarke."

Within a few days thereafter the defendant Oberg delivered the certificate to Clarke requesting him to have the certificate transferred to Oberg upon the books of the voting trustees; but Clarke, instead of doing as directed, pledged the same for his own benefit to the plaintiff bank, the bank loaning to him the sum of $2,000 upon his promissory note, receiving the certificate as a pledge to secure said loan.

Frederick W. Zoller, the secretary of the Union Trust Company of Rochester, the plaintiff, testified that Clarke came to the bank and wanted a loan

of $2,000 on this stock, saying that the stock was sold to a Mr. Lyon for $2,500; that Lyon was out of town; and that when he returned he would get the $2,500 and pay the loan. Zoller finally made the loan, relying upon the stock as security, Clarke delivering the certificate with the blank assignment and power to transfer indorsed thereon, in the same condition as received by him. Zoller testified that, at the time he made the loan, he had no notice of Oberg's claim to the stock; that he supposed Clarke owned the stock; that Clarke told him he had made a sale of the stock and would get his money in two weeks. Zoller examined the certificate and noticed that it was originally issued to Adams and that it was indorsed in blank. In response to the inquiry as to whether he thought that Adams had transferred the stock to some other person, he replied that the stock is negotiable like thousands of transactions; that he did not know anything about what Mr. Adams did, and he made no inquiries; that he made no inquiry of Lyon concerning the certificate; and that Clarke's reputation as a business man was all right at that time, so far as he knew.

The object of the action is to enforce the lien upon the stock so pledged. The trial court found that the delivery of the certificate by Oberg to Clarke was not negligent under the circumstances and that he used requisite care and caution, in the transaction, for the protection of himself and others; that the circumstances surrounding the transaction with the plaintiff required it to make inquiry concerning the ownership of the certificate which the plaintiff neglected to do, and was negligent for that reason; that Clarke feloniously appropriated the certificate to his own use; that Oberg was the lawful owner thereof; and that the retention by the plaintiff of the same was unlawful, and directed a dismissal of the plaintiff's complaint, with costs.

Argued before McLENNAN, P. J., and KRUSE, ROBSON, FOOTE, and LAMBERT, JJ.

George A. Carnahan, of Rochester, for appellant.
William H. Burr, of Rochester, for respondents.

KRUSE, J. [1] The defendant Oberg delivered to one Clarke, the wrongdoer, his certificate of stock without writing his own name in the blank assignment and power to transfer the stock, indorsed thereon, and executed by the man who, on the face of the certificate, appeared to be the owner thereof. The certificate was delivered to Clarke to be surrendered and reissued to Oberg. Although Clarke was the secretary of the company, he was not the agent of the voting trustees for transferring the stock upon the books of the trustees. They had an agent of their own for that purpose. Clarke pledged the certificate to the plaintiff bank, to secure the payment of a loan of $2,000, made to him on the faith of the pledge. The question is: Who shall bear the loss of that transaction, the owner of the stock or the bank, the plaintiff Trust Company?

While the actual authority of Clarke was limited to having the stock transferred upon the books, as provided by the certificate, and reissued, Oberg, by delivering the certificate, with the blank assignment and power, clothed Clarke with the indicia of ownership and apparent authority to sell and dispose of the stock. While Clarke may have been guilty of larceny in pledging the stock, as the learned trial judge holds, it was not a larceny of taking, but of misappropriating, the stock. If there had been a felonious taking, I think the bank could not hold the stock against the owner; but where, as in this case, the owner voluntarily delivers to another his stock, indorsed in blank as this was, although for a special purpose, and the person whom the owner so in-

trusts with the stock sells it to an innocent purchaser, the owner who put it in the power of the person to do the wrongful act should suffer the loss resulting therefrom, rather than the innocent third person who dealt with the wrongdoer upon the apparent authority with which the owner had clothed him. Not only did Oberg give Clarke apparent authority to sell and dispose of the stock, but it would seem that he was lacking in prudence in delivering the certificate with the assignment and power in blank. Very likely, it may have been through overconfidence or without fully appreciating the effect of delivering the certificate in that condition, but it was Oberg who selected Clarke, not the bank, who intrusted Clarke with the certificate, under such circumstances as to enable Clarke to perpetrate the fraud.

There has been much controversy in the courts over this and kindred questions. I shall not stop to analyze the decisions. It is possible that the views of the judges, as expressed in their opinions, may not be in entire accord; but the principle applicable to this case is well established, and I can do no better than to quote from the opinion of Judge Rapallo in the case of McNeil v. Tenth National Bank, 46 N. Y. 325, 329, 330 (7 Am. Rep. 341), as follows:

"It must be conceded that, as a general rule, applicable to property other than negotiable securities, the vendor or pledgor can convey no greater right or title than he has. But this is a truism, predicable of a simple transfer from one party to another where no other element intervenes. It does not interfere with the well-established principle that where the true owner holds out another, or allows him to appear, as the owner of, or as having full power of disposition over, the property, and innocent third parties are thus led into dealing with such apparent owner, they will be protected. Their rights in such cases do not depend upon the actual title or authority of the party with whom they deal directly, but are derived from the act of the real owner, which precludes him from disputing, as against them, the existence of the title or power which, through negligence or mistaken confidence, he caused or allowed to appear to be vested in the party making the conveyance. Pickering v. Busk, 15 East. 38; Gregg v. Wells, 10 Adol. & El. 90; Saltus v. Everett, 20 Wend. 268, 284 [32 Am. Dec. 541]; Mowrey v. Walsh, 8 Cow. 238; Root v. French, 13 Wend. 570 [28 Am. Dec. 482.]"

"The true point of inquiry in this case is whether the plaintiff did confer upon his brokers such an apparent title to, or power of disposition over the shares in question, as will thus estop him from asserting his own title, as against parties who took bona fide through the brokers.

"Simply intrusting the possession of a chattel to another as depository, pledgee, or other bailee, or even under a conditional executory contract of sale, is clearly insufficient to preclude the real owner from reclaiming his property, in case of an unauthorized disposition of it by the person so intrusted. Ballard v. Burgett, 40 N. Y. 314. 'The mere possession of chattels, by whatever means acquired, if there be no other evidence of property or authority to sell from the true owner, will not enable the possessor to give a good title.' Per Denio, J., in Covill v. Hill, 4 Denio, 323.

"But if an owner intrusts to another, not merely the possession of the property, but also written evidence, over his own signature, of the title thereto, and of an unconditional power of disposition over it, the case is vastly different. There can be no occasion for the delivery of such documents, unless it is intended that they shall be used, either at the pleasure of the depository, or under contingencies to arise. If the conditions upon which this apparent right of control is to be exercised are not expressed on the face of the instrument, but remain in confidence between the owner and the depository, the case cannot be distinguished in principle from that of an agent who receives secret instructions qualifying or restricting an apparently absolute power."

This principle was quite recently applied in a case decided by the First Department, to protect a bona fide transferee of stock upon a state of facts no stronger for its application than here. Talcott v. Standard Oil Co., 149 App. Div. 694, 134 N. Y. Supp. 617. Whether the doctrine of implied agency or the rule of negligence is to be applied to Oberg's conduct, the result is the same; the loss should fall upon Oberg, unless, of course, the bank was also at fault in failing to make due inquiry respecting the ownership of the stock when it took the certificate.

[2] That is the only question remaining to be considered, viz., whether the plaintiff is a bona fide holder of the stock. The trial court found that the plaintiff was negligent in failing to make sufficient inquiry concerning the ownership of the stock. It is true that Clarke was not asked the specific question whether he was the owner of the stock, but that would hardly seem to have been necessary. Clarke was in possession of the certificate, and the apparent owner, and asked to borrow money on it. While he stated that he had sold it, that did not imply that he had parted with the title, in view of his statement made in that connection that he expected to receive his pay therefor within a few days. Clearly, what was meant by that statement was that he had agreed to sell it and was holding it until he got his pay. If Zoller, who represented the Trust Company in the transaction, had made inquiry of Lyon, to whom Clarke said he had sold the stock, he would not have received any information as to the claim of Oberg. At least, there is nothing in the record to so indicate, and I think no such presumption can be indulged. If he had gone to the books, where the stock was registered, he would have found the stock registered in the name of Adams, just as it appeared on the face of the certificate. If he had gone to Adams himself, he would have learned that Adams had sold the certificate to Clarke, because it appears that Clarke bought of Adams and sold to Oberg. It is difficult to see how any reasonable inquiry which Zeller might have prosecuted would have led to the discovery that Oberg was the owner of the stock. His name did not appear upon the certificate, and there was nothing disclosed to Zoller to indicate that Oberg was the owner of the stock. In fact, it was not until some time after that, that Oberg discovered that the stock had been pledged, or that Zoller or any one on behalf of the plaintiff became aware that Oberg made any claim to the stock.

I am of the opinion that the plaintiff's claim on the stock should be protected to the extent of the loan made on the faith of the pledge. There should be a reversal of the judgment upon the law and the facts, and, in view of the recent amendment to the Code of Civil Procedure (section 1338), the order should designate, as the particular question or questions of fact upon which the reversal is made, the seventh and eighth findings contained in the decision, and the statement in the ninth finding, so far as it finds that there was a wrongful appropriation to the use of the plaintiff, and so far as it connects the plaintiff with the unlawful and felonious appropriation, lying at the foundation of the right to maintain the action and deprive Oberg of his right and title to the certificate, as therein stated. Each of these findings should be held contrary to the evidence and contrary to law.

The further question arises as to whether there should be a new trial or a direction for final judgment. Section 1317 of the Code of Civil Procedure, as amended in 1912 (Laws 1912, c. 380), now explicitly directs this court to render a final judgment, except where it may be necessary or proper to grant a new trial, and to give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties. The purpose of the amendment is to expedite litigation to its final conclusion. The case was tried after the amendment took effect, and I think we should follow the spirit of that amendment and now direct final judgment. The findings to which I have referred should be set aside, and in lieu thereof we should find and decide that Oberg was negligent in delivering the certificate to Clarke with the blank assignment and power of the apparent owner indorsed thereon; that the plaintiff acquired the stock in good faith and without notice that Oberg had any right or claim thereto, and acquired a good title thereto as against Oberg. I think the findings should be embodied in our formal decision, although that may not be necessary. It may be that upon review in the Court of Appeals it would be presumed that every fact warranted by the evidence in support of the judgment had been found by the Appellate Division, as is suggested in the opinion of the court in Bonnette v. Molloy, 153 App. Div. 73, 81, 138 N. Y. Supp, 67, recently decided in the first department.

The judgment should therefore be reversed upon the grounds stated, and final judgment directed in favor of the plaintiff for the relief demanded in the complaint, with costs. All concur, except McLENNAN, P. J., who dissents and votes for affirmance upon the opinion of Clarke, J., delivered at Special Term.