ORVILLE E. BABCOCK et al., Plaintiffs, *v.* NATIONAL SURETY COMPANY, Defendant.

(Supreme Court, New York Special Term, February, 1919.)

Negotiable instruments — interim certificates, representing conditional rights of holders to receive from a trust company definitive bonds of a corporation, are not negotiable — banks — bonds.

Interim certificates issued by a trust company, representing the conditional rights of the holders to receive from the trust company definitive bonds of a certain corporation when issued, which certificates are not signed by the corporation, do not contain an unconditional promise or order to pay a sum certain

in money, are not payable on demand or at a fixed or determinable future time, are not negotiable.

Where an action to recover possession of five definitive bonds, each with all coupons attached, or in case of failure to so obtain said bonds, for judgment for their value, is based on plaintiffs' claim of ownership of five interim certificates which, after they had been stolen from the vaults of a national bank in which they had been deposited by the true owner for safekeeping, had been purchased by plaintiffs for value without notice of any infirmity in their title or of any equity whatsoever, the defendant surety company, which had paid to the national bank the full value of the definitive bonds called for by the stolen certificates, is entitled to judgment upon the merits, adjudging the title to said bonds to be in said defendant and directing the delivery of the same to it.

Action to recover possession of certain gold bonds.

Morgan, Carr & Baiter (Reid L. Carr and Charles W. G. Baiter, of counsel), for plaintiffs.

William R. Page, for defendant.

Davis, J. This action was brought originally against the Guaranty Trust Company of New York to recover the possession of five first mortgage six per cent twenty-five-year sinking fund gold bonds of Wilson & Co., Inc., of the denomination of $1,000 each, with all coupons attached, or in case of failure to so obtain said bonds, for judgment for their value. The action is based upon the plaintiffs' claim of ownership of five interim certificates purchased by them in good faith for value, which five certificates were part of an issue of $15,000,000 of interim certificates made by the said trust company. The defendant surety company was interpleaded in place of the trust company. In

the summer of 1916 the Harriman National Bank received for safekeeping from W. W. Davis, one of its depositors, five of these interim certificates numbered M-1574 to M-1578 inclusive, calling for five $1,000 definitive bonds of the Sulzberger & Sons Company, or its successor, Wilson & Co., Inc., Sulzberger & Sons Company having changed its name on or about July 27, 1917. The certificates were placed in an envelope and registered under the name of the said Davis and put in the vaults of the Harriman National Bank. In June, 1916, the customary examination of the securities of the bank was made by Washington M. Logan, alias O. L. Houston, alias William Bower, an employee of Swasey & Co., auditors and accountants, which company had been employed by the bank for the purpose of auditing and checking up all the securities held by the bank and in its possession. On or about August 20, 1916, the Harriman National Bank discovered that these five interim certificates owned by Davis were missing from the vaults of the bank. Later, and about November 2, 1916, an indictment was found against Logan for grand larceny in the first degree and for receiving stolen goods, to wit, the said five interim certificates in question, and on January 29, 1918, Logan, on his plea of guilty, was convicted of grand larceny in the second degree for the theft of the said five interim certificates from the vaults of the Harriman National Bank and was sentenced to serve a term in the state prison. About June 19, 1916, Logan sold these five stolen interim certificates through John Muir & Co., stockbrokers, representing himself to them as William Bower. They were purchased by Siegel & Co., and sold by them to Babcock, Rushton & Co., stockbrokers, the plaintiffs herein. The Guaranty Trust Company of New York having refused to deliver the definitive bonds

called for by the said interim certificates upon demand by plaintiffs, this action was brought by them against said trust company. After the commencement of the action the Guaranty Trust Company of New York made a motion to substitute the Harriman National Bank and the National Surety Company as defendants in its stead. The Harriman National Bank of New York having disclaimed any interest in the litigation, the National Surety Company was substituted as defendant, and the trust company was directed to hold as custodian the five definitive bonds called for by the said five interim certificates. After the theft of the certificates the Harriman National Bank bought five definitive bonds of Wilson & Co. in the open market and delivered them to Davis in place of the stolen certificates. On November 3, 1916, upon demand of the Harriman National Bank, the defendant surety company paid the said bank the full value of the definitive bonds called for by the stolen certificates. The defendant surety company claims to be subrogated to the right of said Davis and to be entitled to the definitive bonds called for by the stolen certificates. This contention is based upon the fact that on November 5, 1915, the said surety company with four other surety companies executed and delivered to the Harriman National Bank a bond to save harmless and indemnify such bank, among other things, against loss by robbery, burglary and theft within the premises of the bank, and that the defendant surety company *itself* had reimbursed and paid the said bank the full amount of its loss suffered by reason of the theft of said five interim certificates. The plaintiffs contend that these certificates are negotiable instruments, transferable by delivery, and also that they are to be treated the same as the bonds themselves, " the temporary symbol and

equivalent of the bonds represented thereby,'' and as the bonds themselves are negotiable, these interim certificates also are. It is undisputed that the plaintiffs were purchasers in good faith and for value of these stolen five interim certificates and without notice of any infirmity in their title or of any equity whatsoever. At the time of the demand by plaintiffs all of the definitive bonds of Wilson & Co., Inc., had been issued and delivered to the Guaranty Trust Company of New York, and were so issued and delivered to the amount of $8,000,000 on September 26, 1916, and $7,000,000 on September 28, 1916. It appears that Sulzberger & Sons Company, a New York corporation, and the Sulzberger & Sons Company of America, a New Jersey corporation, duly executed and delivered a mortgage and trust deed dated April 1, 1916, and acknowledged April 29, 1916, to the Guaranty Trust Company of New York. This trust mortgage covered certain properties and securities therein specified of the Sulzberger companies and was given to secure the payment of an issue of $25,000,000 first mortgage twenty-five-year sinking fund gold bonds to be issued by the Sulzberger & Sons Company, of which amount $15,000,000 were issuable simultaneously with the making of the trust mortgage and $10,000,000 reserved for further issuance. Instead of waiting to have the $15,000,000 worth of bonds engraved the Sulzberger & Sons Company executed and delivered to the Guaranty Trust Company of New York contemporaneously with the trust mortgage, as permitted by the terms thereof, one temporary bond, without coupons, for $15,000,000, dated April 1, 1916, which bond was made exchangeable for the definitive engraved bonds. The temporary bond is in form as follows: '' United States of America. No. T1. State of New York. $15,000,000. Sulzberger

& Sons Company. First mortgage six per cent. twenty-five-year sinking fund gold bond, Series A. Temporary bond exchangeable for definitive engraved bonds. Sulzberger & Sons Company, a corporation of the State of New York (hereinafter called the company), for value received, hereby promise to pay to bearer, or if this bond be registered, to the registered holder hereof, on the first day of April, 1941, fifteen million dollars in gold coin of the United States of America of or equal to the standard of weight and fineness as it existed on April 1, 1916, and to pay interest thereon from the first day of April, 1916, at the rate of six per cent. per annum in like gold coin, semi-annually, on the first day of April and the first day of October in each year, upon presentation of this bond for notation hereon of the payment of such interest. The principal and interest of this bond are payable at the office or agency of the company in the borough of Manhattan, in the city of New York, or at the option of the holder of this bond, at the office or agency of the company in the city of Chicago, and both principal and interest are payable without deduction for any taxes, assessments or governmental charges (other than any federal income tax) which the company or the trustee under the indenture hereinafter mentioned or the co-mortgagor hereinafter mentioned may be required to pay thereon or to retain therefrom under any present or future law of the United States of America, or of any state, county, municipality or other taxing authority therein. This bond is a temporary bond without coupons and is one of a duly authorized issue of bonds of the company, known as its first mortgage twenty-five-year sinking fund gold bonds, limited to the aggregate principal amount of twenty-five million dollars at any one time

outstanding, issued and to be issued under, and all equally and ratably secured by, an indenture of mortgage and deed of trust, dated April 1, 1916, duly executed by the company and by the Sulzberger & Sons Company of America (herein referred to as the co-mortgagor) to Guaranty Trust Company of New York, as trustee. For a statement of the properties mortgaged and pledged, the nature and extent of the security, the rights of the holders of the bonds, and the terms and conditions upon which the bonds are issued and secured, reference is hereby made to said indenture. This bond is exchangeable for definite engraved coupon bonds of said issue when engraved and prepared for an aggregate principal amount equal to that of, and of the same series as, this bond, such definitive bonds to be issued under the present name of the company or under such changed name as it may in the meantime have adopted. The bonds of Series A of said issue are subject to redemption, as a whole or in part, at the election of the company or its successors, or by operation of the sinking fund, at one hundred and seven and one-half per cent. of the principal amount hereof, and accrued interest, on any semiannual interest day, upon eight weeks' previous published notice, all as provided in said indenture. In case certain events of default, as defined in said indenture, shall occur, the principal of said bonds may become or be declared due and payable, in the manner and with the effect provided in said indenture. No recourse shall be had for the payment of any part of the principal or interest of this bond, or for any claim based hereon, or otherwise in respect hereof or of said indenture, against any incorporator or any past, present or future stockholder, officer or director of the company or of the co-mortgagor, or of any

successor corporation, either directly or through any of said corporations or by virtue of any statute or constitutional provision or by enforcement of any assessment or penalty or otherwise; any and all liability of said incorporators, stockholders, directors and officers being by the acceptance hereof and as a part of the consideration for the issue hereof expressly waived and released. This bond shall pass by delivery unless registered in the owner's name at the office or agency of the company in said borough of Manhattan, such registration being noted on the bond by or on behalf of the company. After such registration no transfer shall be valid unless made at said office or agency by the registered holder hereof or by his duly authorized attorney and similarly noted on the bond; but the same may be discharged from registration by being in like manner transferred to bearer, and thereupon transferability by delivery shall be restored; but this bond may again from time to time be registered or transferred to bearer as before. This bond shall not become valid or obligatory for any purpose until the trustee under said indenture shall have signed the form of certificate indorsed hereon. In witness whereof, said Sulzberger & Sons Company has caused these presents to be signed by its president or one of its vice-presidents and its corporate seal to be hereunto affixed and attested by its secretary or one of its assistant secretaries, as of the first day of April, 1916. Sulzberger & Sons Company, by Thos. E. Wilson, President. (Corporate seal.) Attest: Nathan Grabenheimer, Secretary. Trustee's certificate. This bond is one of the bonds described in the within mentioned mortgage and deed of trust. Guaranty Trust Company of New York, Trustee, by W. C. Cox, Vice-President.'' The entire issue of $15,000,000

of bonds at the time of the execution of the trust mortgage had been underwritten by a syndicate managed by Hallgarten & Company, and thereafter and on or about May 1, 1916, interim certificates for $15,000,000 worth of definitive bonds were issued by the Guaranty Trust Company of New York and delivered to Hallgarten & Company who thereupon turned over the money for such certificates less their commissions to Sulzberger & Sons Company. The interim certificates are in form as follows: " No. M1575. Interim Certificate for First Mortgage Six Per Cent. Twenty-five-Year Sinking Fund Gold Bond of Sulzberger & Sons Company. (Engraved bonds to be issued under new corporate name if one adopted.) $1,000. The undersigned, Guaranty Trust Company of New York, having received a temporary bond or temporary bonds of Sulzberger & Sons Company, a New York corporation, for the aggregate principal amount equal to the aggregate face amount of the interim certificates, of which this is one, bearing interest at the rate of six per cent. per annum, issued under an indenture of mortgage and deed of trust, dated April 1, 1916, between said Sulzberger & Sons Company and The Sulzberger & Sons Company of America, a New Jersey corporation, and Guaranty Trust Company of New York, as trustee; and said Sulzberger & Sons Company having agreed to deliver to the undersigned as soon as practicable, in exchange for said temporary bond or temporary bonds, engraved coupon bonds for the like aggregate principal amount and of the denomination of one thousand dollars ($1,000) each, issued under said mortgage and deed of trust by said Sulzberger & Sons Company under its present name or under such changed name as it may in the meantime have adopted. This is to certify that the bearer hereof,

upon the surrender of this certificate at the office of the undersigned in the City of New York, is entitled to receive one of such engraved bonds for one thousand dollars ($1,000) principal amount, with the coupons maturing October 1, 1916, and all subsequent coupons attached, when and as said engraved bonds are delivered to the undersigned in exchange for said temporary bond or temporary bonds, and that in the meantime the undersigned holds said temporary bond or temporary bonds for the *pro rata* benefit of the holders of the interim certificates of which this is one. This certificate, if of a denomination greater than one thousand dollars ($1,000), may be exchanged at the option of the holder at said office for like certificates of one thousand dollars ($1,000) each, or such multiple thereof as the undersigned may issue, and for an equal aggregate principal amount. All rights under or by virtue of this interim certificate shall pass by delivery hereof. Dated New York, May 1, 1916. Guaranty Trust Company of New York. By F. J. Whitten, Vice-President." The question to be determined is whether the certificates in question are negotiable instruments, for, if they are not, the plaintiffs obtained no title to them under the facts of this case, and are not entitled to a recovery herein. *Union Trust Co. of Rochester* v. *Oliver,* 155 App. Div. 646; *People* v. *Bank of North America,* 75 N. Y. 547, 566; *Knox* v. *Eden Musee Americain Co.,* 148 id. 441, 456. Whether or not these interim certificates are negotiable instruments must be determined by the Negotiable Instruments Law of this state and not by any custom of the commercial and business world in their treatment of such certificates as to their negotiability, nor by the case law when it conflicts with the statute. *Kelso & Co.* v. *Ellis,* N. Y. L. J. Dec. 23, 1918. "Written contracts are not necessarily negoti-

able simply because by their terms they inure to the benefit of the bearer." *Railroad Co.* v. *Howard,* 7 Wall. (74 U. S.) 392, 415. These interim certificates are precisely what their name indicates — paper given to certify that bearer, upon the surrender of the certificate at the office of the Guaranty Trust Company of New York, is entitled to receive an engraved bond for a stated principal amount, with the coupons maturing October, 1916, and all subsequent coupons attached, when and as said engraved bonds are delivered to the said trust company in exchange for the temporary bond, and that in the meantime the said trust company holds the temporary bond for the *pro rata* benefit of the holders of the interim certificates. The Guaranty Trust Company assumes no responsibility, liability and promises nothing except to hold the temporary bond as provided, and to deliver the indicative bonds when they receive them and upon surrender of the certificate. The certificate represents a conditional right to receive from the said company a bond, as specified in the certificate. Neither Sulzberger & Sons Company, nor Wilson & Co., Inc., have obligated themselves to the holder of the interim certificate to do anything so far as the delivery of the indicative bond to him is concerned. The fact that the *bona fide* holder of a certificate is entitled to a bond arises because of the contract between the Guaranty Trust Company and the *bona fide* holder of a certificate. These certificates are not signed by the maker of the bond; they do not contain an unconditional promise or order to pay a sum certain in money, and they are not payable on demand or at a fixed or determinable future time. The essential elements of a negotiable instrument are lacking. No interest on the bond was collectible upon the certificates. It was not until the

definitive bonds with attached coupons were delivered in place of the certificates that interest was possible of collection. Judgment for defendant on the merits, adjudging title to the said five definitive bonds to be in defendant surety company, and directing a delivery of the same to said defendant, with costs to said defendant.

Judgment accordingly.