ELLERY G. WILLIAMS, Respondent, *v.* DANIEL H. FITZ-
. HUGH et al., Executors of ALLEN AYRAULT, Appel-
LANTS.

*Mortgage on Land in another ·State—Jurisdiction— Promissory · Notes—*
*Usury— Void in part.*

When a mortgage is ·given to secure the payment of notes, a part of which
are usurious, the mortgage is void only to the extent that it was given to se-
cure the payment of such usurious notes, but is a valid security for the notes
not usurious.

• The Plaintiff sought in this action a judgment declaring cer- ·
tain six notes (made by the Plaintiff, and given to the Appellants'
testator, Ayrault)—two dated April 3, 1854, for $5,000 each, and
four dated July 1, 1854, for $5,000, $6,000, $6,000, and $4,000
respectively, amounting in the aggregate to $31,000, and a mort-
gage upon land in Ohio, given by the Plaintiff to secure the
payment of the six notes, void for usury, and adjudging and de-
creeing that they be given up, cancelled, and discharged, and
forbidding the prosecution of an action already commenced in one
of the Courts of Ohio upon two of those notes, or any other action
upon any of the said notes or the said mortgage. The original
Defendant, Allen Ayrault, having died pending the action, the
action was revived against the Appellants, his executors.

...The action was tried at Special Term, in the Supreme Court;
and to sustain the action the Plaintiff produced a record of judg-
ment, which set forth the alleged transactions in which the notes
were given, and by which one of the notes, dated in July, was
adjudged void for usury; and upon the evidence contained in the
record, the Judge, at Special Term, found that all of the six notes
were so void, and a judgment was rendered declaring the notes
and the mortgage to be void for usury, and that the Appellants
deliver up the notes and mortgage to the Plaintiff, to be cancel-
led, and execute a discharge of the mortgage in such form that it
may be recorded in Ohio, so that it may be discharged of record

and cease to be a lien upon the real estate described in it; and further enjoining the prosecution of an action (found to be thus pending) on some of the notes in one of the Courts of Ohio, and awarding to the Plaintiff his costs.

On appeal to the General Term, the Supreme Court modified the judgment so as to except from the operation thereof the two notes for $5,000 each, dated April 3, 1854, on the ground that the before-mentioned record did not necessarily decide that those two notes were usurious; and they adjudged that in all other respects the said judgment be affirmed.

The executors (Defendants below) appealed to this Court.

*Scott Lord* for the Defendants, Appellants.

*George F. Danforth* for the Plaintiff, Respondent.

WOODRUFF, J.—The principal question which was discussed on this appeal, and which includes nearly all of the subordinate questions raised, is, will the Courts of this State entertain a bill to declare void, and compel the cancellation of a mortgage of lands lying in another State, and executed there in pursuance of a contract entered into in this State to secure loans made and payable in this State, some of which loans are usurious and void by our laws?

This question may be intelligibly discussed by inquiring, first, would such a bill be entertained under the same circumstances if the lands were situated in this State? And second, how is the question affected by the location of the lands without our jurisdiction? And third, should the Court require the surrender and discharge of such a mortgage, without the payment of the loans which are not found to be usurious? ·

1st, then, suppose the lands were situated in this State.

It cannot be denied, indeed I do not understand the counsel for the Appellants to question, that such a mortgage is void by the law of the State of New York. Our statute declares that " all . . . assurances, conveyances, all other contracts or securities . . . . . whereby there shall be reserved or taken, or *secured*, or agreed to be reserved or taken," any greater sum or value for the

loan or forbearance of money than at the rate of seven per cent per annum, " shall be void."

The proposition is, that a security given to secure the payment of money is void if it be given to secure a usurious loan; and if it be so given, the fact that it was also given to secure loans which were not usurious will not preserve it from entire condemnation. If void in part, it is void altogether.

The late learned Ch. J. Jones, in The Fulton Bank *v.* Benedict (1 Hall S. C. R. 480, 546), thus states the proposition : " It is well settled that if any part of the loan or debt for which the note or security was given is usurious, the security is void ; " referring, among other cases, to Harrison *v.* Hannel (5 Taunt. 780). In Jackson *v.* Packard (6 Wend. 415) it is held that a mortgage given to secure a sum of money, consisting of one loan made prior thereto, which is usurious, and another which is free from usury, the mortgage is void. " If a mortgage, or any other security, is given for two or more antecedent loans, either of which was infected with usury, the whole security is void." That under the statute "there is no such thing as such an instrument being void in part, and good for the residue ; the taint of usury destroys the whole security." The debt which was free from usury may be recovered, but the mortgage is void (Rice *v.* Welling, 5 Wend. 595) ; and in Hammond *v.* Hopping (13 Wend. 505) the same doctrine is reasserted in reference to contracts generally. " The statute against usury renders any contract infected with it utterly void ; but if the usurious security was given in part for a pre-existing valid debt, that debt is not destroyed by the illegal security." These decisions have stood as the law of this State for more than thirty years, and I am not aware that their correctness has been questioned in any of our Courts.

2d. If, then, the mortgaged premises were in this State, have our Courts jurisdiction to decree that the mortgage be given up and cancelled, and is it error upon the facts assumed to do so?

The statute is (§ 4), " Whenever any borrower of money . . . shall file a bill in chancery for *relief* or discovery against any violation of the provisions . . of this act, it shall not be necessary

for him to pay, or offer to pay, any interest or principal on the *sum or thing loaned*, nor shall any Court of Chancery require or compel the payment . . . of the principal sum or interest, or any portion thereof, as a condition of granting relief." (§ 5) "Whenever it shall satisfactorily appear by the admissions of the Defendant, or by proof, that any . . . . . assurance, pledge, conveyance, contract, security . . . has been taken or *received* in violation of the provisions . . . . . of this act, the Court of Chancery *shall declare* the *same to be void*, and enjoin any prosecution thereon, and *order the same to be surrendered and cancelled* " (Laws 1837,ch.430).

This language, taken literally, seemed not only to confer jurisdiction, but absolutely to require the Court of Chancery to decree the surrender and cancellation of securities infected with usury, of whatever description, whenever the borrower saw fit to invoke the interposition of the Court, without the aid of any other ground for coming into that tribunal than the fact of usury.

But the Chancellor, in Perrine *v.* Striker (7 Paige, 598), held that where the party had a full and complete remedy at law, he could not come into the Court of Chancery for relief. That this statute was not intended "to compel the Court of Chancery to take jurisdiction of every question of usury, although a perfect remedy, both as to discovery and relief, could be had in the Court of law." Hence, where the parties to a note not negotiable sought a discovery and perpetual injunction against a suit thereon (although the statute authorized the examination of the Plaintiff in the suit at law on the trial), on the ground that it was usurious, the bill was dismissed, because the remedy was complete at law. But he recognized the jurisdiction and the propriety of its exercise when there were any special circumstances which made the remedy at law ineffectual or incomplete. In Morse *v.* Hovey (9 Paige, 197), on dismissing the bill, the Chancellor affirms the decision in Perrine *v.* Striker, and expounds it more fully, thus: "The Legislature did not intend to transfer to this Court concurrent jurisdiction with Courts of law in every case of a usurious contract, but merely to give to this Court the power to exercise its jurisdiction in those cases where it was necessary to aid the defence of usury,

or to remove *usurious securities which were a cloud upon the Complainant's* title to real property, or which might be used at law to his injury, or in such a manner that he could not interpose a legal defence to a suit on them in a Court of law. Here the note is *negotiable*, so that it may be sued in the name of a third person; and if the bill had contained an allegation that the usury could only be proved by the oath of the Defendant, it might possibly have presented a case for the interference of this Court."

Conceding that this relaxation of the stringent and imperative language of the statute is reasonable, no construction of the statute has gone further.

Accordingly, bills by borrowers to remove usurious securities which are a cloud upon the Complainant's title to real property, have uniformly been entertained. See Cole *v.* Savage (10 Paige, 583), questioned without impeaching the general doctrine (Post *v.* Bank of Utica, 7 Hill, 391 ; Peters *v.* Mortimer, 4 Edwd. Ch. R. 279 ; Pearsall *v.* Kingsland, 3 Edwd. Ch. 195 ; Dry Dock Bank *v.* Am. Life Ins. & T. Co., 3 Comst. 361 ; Schermerhorn *v.* Talman, 14 N. Y. 93 ; Manice *v.* Dry Dock Co., 3 Edw. Ch. R. 143).

It is no answer to such a bill that the mortgagor has a good defence to a bill for the foreclosure of the mortgage. It is an apparent incumbrance on the land. Its invalidity depends upon extrinsic facts. The doctrine of Cox *v.* Clift, cited by the Appellant (2 N. Y. 123), that the Complainant has a perfect legal defence against it (when a right under it is asserted) " written down in the title-deed," has no application to it ; and Ward *v.* Dewey (16 N. Y. 519) was decided on these grounds.

The mortgage is an impediment to a sale of the land for its value. The mortgagor is not bound to wait until the mortgagee attempts a foreclosure ; not only for these reasons, but because, in the meantime, it may become impossible to prove his defence. If this be so, then if the lands mortgaged were situated in this State, the mortgage in question was wholly void, and there is sufficient ground for invoking the interposition of the Court to decree that such a mortgage be surrendered, and cancelled or discharged. Whether it should be so discharged without the payment of that

portion of the debt which has not been adjudged to be usurious, and which, for the purposes of this appeal, is to be deemed both legally and equitably due, will be presently considered.

Second. How, then, is the question affected by the circumstance that the mortgaged premises are situated in the State of Ohio, where the mortgage was executed?

The mere circumstance that the land is in another State can, upon no principle that I can discover, furnish a reason for denying the jurisdiction of our Courts, or for questioning the propriety of its exercise. If, when an instrument has been obtained by fraud, a Court of Equity, having jurisdiction of the fraudulent party, will compel him to do equity, will declare the instrument void, and decree a reconveyance, or the execution of such instrument as may be requisite to the protection of the innocent party, it is not because the case of fraud is peculiar in that respect, but because the Complainant is entitled to relief which lies in part, at least, in a remedy against the person to compel him to do equity. In such case it would be possible to say to the Complainant, you can defend in the foreign State or country any claim founded on the instrument fraudulently obtained—nay, you can there institute your proceeding and obtain a decree in rem that will protect your land.

That is no answer. The Court here will act directly upon the person, and compel him to give up the title, or apparent right so acquired, and restore the aggrieved party to his former condition. This is well shown in De Klyn *v.* Watkins (3 Sanfd. Chy. 185, and cases there cited).

So, specific performance of contracts for the conveyance of land in another jurisdiction, although a foreign country, will be decreed, if the Court obtain jurisdiction of the person (Ward *v.* Arredondo, Hopkins' Ch. 213 ; Mitchell *v.* Bunch, 2 Paige, 615, 616).

So, to compel the performance of a trust in lands, though granted in a foreign jurisdiction, a bill will lie in our Courts. In Massie *v.* Watts (6 Cranch, 158), Chief-Justice Marshall states, that where the Defendant is liable to the Plaintiff, either in con-

sequence of contract, trust, or of any species of malâ fides, the principles of equity give the Court jurisdiction wherever the person may be found, notwithstanding the title to lands out of the jurisdiction may be involved; and the cases collected in 2 White and Tudor's Leading Cases in Equity (Penn *v.* Lord Baltimore, p. 664), and the notes thereto in the American edition (Law Library, vol. 56, N. S., p. 308), show that this jurisdiction is exercised in England, whether the lands are within the jurisdiction of the Court or not, and even when not within the realm (see also the American cases there collected).

I am entirely unable to discover any difference in the application of the principle governing those cases, to those and to the cases under consideration. Whenever the Court have, by reason of the equitable rights of the Complainant, a power or duty to act upon his person, to compel the execution of a deed, to set aside a conveyance, or to perform a trust, the location of the lands affected being in another jurisdiction forms no impediment to the jurisdiction, nor any reason why it should not be exercised. The specific facts out of which the right of the Plaintiff in equity arises cannot affect the rule.

If, then, the mere fact that the lands mortgaged by the Plaintiff are situated in Ohio, is no defence, does the circumstance that the Defendants' testator, in his life, twice commenced a suit upon some of the notes secured by this mortgage, in one of the Courts in Ohio having jurisdiction, and that the present Plaintiff set up as a defence the same matters which are alleged in his complaint here, and demanded that the mortgage be cancelled, make any difference? It seems to me that the short but conclusive answer is, that the pendency of another action for the same cause in another State, though prosecuted by the same Plaintiff, is no bar to an action in this State; still less can the pendency of a suit prosecuted by the Defendant, and under his control, to be proceeded in or abandoned at his pleasure. Besides, the suit can in no just sense be said to be prosecuted for the same cause. The one is to collect "some of the notes," the other is to compel the surrender of the notes and the security given for their payment.

It would be a novelty to hold that a Plaintiff could not prosecute and maintain his affirmative rights in this State, because he was asserting those rights for his protection in defending a prosecution by his adversary in another jurisdiction.

It has, however, been suggested that the judgment in this case is erroneous, because, although by the law of this State a mortgage given to secure two demands, one valid and the other void for usury, is wholly void, such is not the law of Ohio; that there the mortgage is valid and effectual as a security for the debt which is not usurious. In the first place, no such fact is found by the Judge who tried the cause, and no evidence was given on the trial to that effect, and no such point appears to have been in any manner raised below. In the next place, the whole contract was entered into in this State, and to be performed in this State. True, the mortgage appears to have been executed, or at least the execution of the mortgage to have been acknowledged, in Ohio; but it was delivered here in pursuance of a contract made here to secure the payment of notes made and payable here.

I think the right of the Plaintiff to its surrender and cancellation is to be determined by our laws, and not by the laws of Ohio; and if the transaction through which it was to become an operative security gave to the Defendants' testator no title to hold it as a security by the law of the place where the contract was made and was to be performed, then the Courts of this State should decree its surrender and discharge upon such terms (if any) as they may properly impose.

In short, it is a security given and received by the Defendants' intestate in this State, "in violation of the provisions" of the statute of this State. Although it was received as security for notes not found to be usurious, it was none the less received in violation of the statute, for the reason that, by its very terms, it secured some notes which were usurious. It is to be observed that no complaint is made, nor any claim of error is urged on this appeal, that it was erroneous upon the facts found to pronounce the four notes dated July 1, 1854, to be usurious and void, and direct their surrender.

Third. The question raised by the present appeal relates simply
to that part of the decree which requires the surrender and can-
cellation or discharge of this mortgage, and not to that part
which directs the surrender of the four notes adjudged usurious.

The mortgage is void. No action can be maintained thereon
in this State in any form, and it is a cloud upon the title to the
lands of the Plaintiff.

Does it follow that the decree in this action, so far as it directed
the surrender and discharge of the mortgage, was warranted by
well-established rules of equity applicable to the subject? It is
familiar doctrine in Courts of Equity, that "he who seeks equity
must do equity." And without that, the Court of Equity would
not extend its arm for the relief of the suitor.

If he could protect himself, either in whole or in part, at law,
if he could defend when assailed, very well; he could decline any
concession of the equitable rights of the adverse claimant, and
stand upon his legal position. It might be safe, or it might be in
peril; but if he invoked equitable interposition, he must come
with clean hands, and prepared to do whatever in the judgment
of equity was fair and equitable to his adversary, else the Court
would not entertain him, but would answer, stand upon your legal
rights, or come here and perform the just condition of equitable
relief. It cannot be doubted, therefore, that when a party comes
into a Court of Equity to remove a cloud upon the title to his
land, he must do whatever it is equitable that he should do before
the Court will interfere. In that respect he stands in no other
or better condition than he who comes to compel the specific per-
formance of a contract to convey. He must come prepared to
pay and perform all that, by the conditions of the contract,
he was bound to pay or perform. He who comes to set aside a
conveyance obtained from him by fraud, must come prepared to
restore all that he received as the consideration of such con-
veyance. And on precisely the same ground it was the well-set-
tled rule of Courts of Equity, that he who came into that Court to
set aside a conveyance or other security as void, because given
to secure a usurious loan, must come prepared to pay so much as

he had in fact received. He might stand on his legal rights, and defend any and every endeavor to compel him to pay; but if he invoked the aid of a Court of Equity to give him affirmative relief, that Court recognized his equitable obligation to refund what he had received (Rogers v. Rathbun, 1 Johns. Ch. 367; Tupper v. Powell, 1 John. Ch. 439; Fanning v. Dunham, 5 John. Ch. 122, 137; Morgan v. Schermerhorn, 1 Paige, 544; Fulton Bank v. Beach, 1 Paige, 429; S. C. 3 Wend. 573; Taylor et al. v. Bell et al., 2 Vern. 171; Whitmore v. Francis, 8 Price, 616).

On what ground is the Plaintiff in this case entitled to have his mortgage set aside without qualification or condition? The notes which he had given to secure a usurious debt are declared void, and ordered to be given up to be cancelled. He cannot be prosecuted upon his mortgage in any form in this State, because, by law, it is void. If he has need of further equitable interference, it is because the mortgage is an apparent lien, a cloud upon the title to his land, and he should be relieved therefrom.

Why, then, if he asks further equitable relief, and invokes the further interposition of a Court of Equity therefor, should he not do equity? Why should he not pay to the Defendant what he in fact received.

The answer, and the only answer which is or can be suggested is, that our statute declares (Laws of 1837, chap. 430, § 4) that "Whenever any borrower of money, goods, or things in action, shall file a bill in chancery for relief or discovery, or both, against any violation of the provisions of [the title of the statutes concerning the interest of money], or of this act, it shall not be necessary for him to pay, or offer to pay, any interest or *principal on the sum or thing loaned*, nor shall any Court of Chancery require or compel the payment or deposit of *the principal sum or interest*, or any portion thereof, as a condition of granting relief, or compelling or discovering to the borrower, in any case, *usurious loans* forbidden by the said title or by this act." This section of the act of 1837 was passed to extend the previous title to cases in which the Court was applied to for discovery, as well as cases in which relief alone

was sought, and to relieve him from paying any part of the prin-
cipal or interest, in either case, and it should therefore be read
and construed in connection with such previous law, which is as
follows (1 Rev. Stat., p. 772, § 8) : "Whenever any borrower of
any money, goods, or things in action, shall file a bill in chancery
for a discovery of *the money, goods, or things in action, taken or
received in violation of either of the foregoing provisions,* it shall
not be necessary for him to pay, or offer to pay, any *interest* what-
ever on *the sum or thing* loaned ; nor shall any Court of Equity
require or compel the payment or deposit of *the principal sum,* or
any part thereof, as a condition of granting relief to the borrower,
in any case of a usurious loan forbidden by this chapter." (See Liv-
ingston *v.* Harris, 3 Paige, 528 ; S. C. on appeal, 11 Wend. 329.
See the history of this legislation in Post *v.* Bank of Utica, 7
Hill, 391, et seq.)

What, in these statutes, is the principal sum or interest which
the borrower shall not be required to pay ? Is it not the "usurious
loan," and the interest thereon ? Is it not *the* money, goods or
things in action taken or received in violation of the provisions of
the act ? Most clearly that, and only that. It does not contem-
plate, it is true, the existence of any other equitable condition ;
but it by no means requires that any other condition should be
waived. The subject dealt with is a loan upon usury ; it designs
that there shall be no means, direct or indirect, in which the pay-
ment of such a loan, or any interest thereon, shall be compelled,
either by a Court of Law or Equity, and relief against such pay-
ment accomplishes the end so far as this statute directs relief to be
given. Hence, the discovery spoken of, and authorized by the
statute, is a discovery of *the money,* &c., taken or *received* in
*violation* of the statute, and not money which, not being so receiv-
ed, the borrower is bound, both at law and in equity, to repay ;
and it is the *principal* or interest on *the* sum or thing loaned
in violation of the statute, the payment of which cannot be
required as a condition of relief.

It follows that where a contract or obligation is given for two
or more separate and independent things, having no connection

with each other, and one of them is the security of a usurious debt, although the contract or obligation is altogether void, for reasons above given, and no action at law or elsewhere could be maintained thereon,—nevertheless, if a party comes into a Court of Equity to ask that it be surrendered, all that the statutes of usury have done affecting the Complainant's right to relief is, to forbid that any payment on account of such debt shall be made a condition of relief. As to other conditions the statute is silent, and the Court is left to administer relief upon those principles which govern the subject generally.

When, therefore, the Plaintiff asks that a mortgage be cancelled as a cloud upon the title to his lands, and that a Court of Equity shall so direct in virtue of its power and its disposition to enforce its equitable rights, the Court may not require that he pay a usurious debt, or any part thereof, or any interest thereon ; but it may require the performance of any other duty which is just to the adverse party, unembarrassed by the statutes in question. In equity, the mortgagor in such case stands in reference to debts not usurious, secured by the mortgage, in the same attitude as a Complainant seeking to redeem.

He must pay what at law and in equity he owes.

Nor is this any departure from the doctrine already stated, that the mortgage being void in part, because given to secure a usurious debt, is void altogether. Upon that doctrine the Plaintiff, if he see fit, may rely, and on that ground he may, if he can, defend himself and the title to his lands, whenever and wherever assailed ; but if he asks affirmative action and interference from a Court of Equity, to set aside the mortgage and adjudge its surrender, he must do equity by paying his just debt not impeached for usury.

The most that the Court below should have done was to adjudge that so much of the apparent debt as was secured by the four notes dated in July, 1854, found and adjudged (by the decree as modified by the General Term of the Supreme Court) to be usurious, was void; that the said notes be surrendered to be cancelled, and that the Defendants be enjoined against the prosecution of any suit upon those four notes.

Opinion by WOODRUFF, J.

The judgment should be modified to conform to these views, without costs to either party on the appeal; and the judgment rendered at the Special Term, so far as it adjudged or decreed the surrender or discharge of the mortgage, should be reversed, and so far as it awarded costs to the Plaintiff, should be further reversed and modified so that neither party recover costs of the other in this action.

All concur in modifying the judgment to the effect that the mortgage, to the extent of the usurious notes secured thereby, is void.

Affirmed, with such modification.

JOEL TIFFANY,
State Reporter.