SWAN J. LARSON V. FIRST NATIONAL BANK OF PENDER, NEBRASKA.*

FILED JUNE 19, 1901.   No. 9,974.

Commissioner's opinion, Department No. 3.

Where Indian Lands Have Been Leased and Sublet, a Note Given by the Last Lessee for Rent Is Void Under the U. S. Statute. The Flournoy Live-Stock & Real-Estate Company held a lease from the Indian owners for a large quantity of lands lying within the limits of the Winnebago and Omaha Indian reservation; the company subleased a portion of this land to Larson, taking his note for the rent agreed upon. A statute of the United States relating to these lands provided, "and if any conveyance shall be made of the lands set apart and allotted as herein provided, or any contract made touching the same, such conveyance and contract shall be absolutely null and void." *Held*, That the note given for rent was a part of the contract of subleasing made between the company and Larson; that the statute above quoted made it null and void, and that it could not be enforced against Larson even by a bona-fide holder.

*Rehearing allowed.

ERROR from the district court for Thurston county. Tried below before EVANS, J. *Reversed.*

*D. H. Sullivan* and *R. G. Strong,* for plaintiff in error.

*Guy T. Graves, M. C. Jay, A. C. Abbott* and *Day & Whitcomb, contra.*

DUFFIE, C.

Larson, the plaintiff in error, made his note to the Flournoy Live-Stock & Real-Estate Company for the sum of $600, and this note was indorsed to the defendant in error in the usual course of business before maturity and for a valuable consideration. Suit was brought upon this note against the maker and indorser, and A. L. Maryott and H. C. McHirron, who had guaranteed its payment, were also made defendants. Larson, the maker, alone answered. In his answer he states that the Flournoy Live-Stock & Real-Estate Company had made a pretended lease of certain lands situated within the limits of the Winnebago and Omaha Indian reservation in the state of Nebraska, and that he subleased certain of these lands from said company and executed the note in suit for the rental agreed to be paid therefor for the year 1895. The fifth paragraph of the answer is as follows:

"The defendant, further answering, alleges that the lands pretended to be leased by the said Flournoy Live-Stock & Real-Estate Company to the defendant, had been alloted to Jane, John and George Little Thunder Peterson, and other Indians whose names are to the defendant unknown, all of said Indians residing upon said Winnebago and Omaha reservations, pursuant to an act of Congress of the United States approved February 8, 1887, entitled 'An act to provide for the allotment of lands in severalty to Indians on the various reservations and to extend the protection of the laws of the United States and territories over the Indians, and for other purposes,' the 5th section of which act is in words and figures following, to-wit:

" 'Section 5. That upon approval of the allotment provided for in this act, by the secretary of the interior, he shall cause patents to issue therefor, in the name of the allottees, which patent shall be of legal effect and declare that the United States does and will hold the land thus allotted for the period of twenty-five years in trust for the sole use and benefit of the Indian to whom such allotment shall have been made, or in case of his decease, of his heirs according to the laws of the state or territory where such land is located, and at the expiration of said period the United States will convey the same by patent to said Indian, or his heirs, as aforesaid, in fee, discharged of said trust, and free of all charges or incumbrances whatsoever; Provided that the president of the United States may in any case, in his discretion, extend the period, and if any conveyance shall be made of the lands set apart and allotted as herein provided, or any contract made touching the same, such conveyance and contract shall be absolutely null and void.'

"That said Indians leasing said lands to the Flournoy Live-Stock & Real-Estate Company, aforesaid, were at the time of the making said leases under the supervision and control of the Indian agent appointed by authority of the government of the United States and had no right or authority to enter into any written contract of whatever kind or nature for the alienation, incumbrance or leasing of the real estate alloted to them, as aforesaid; that the said leases procured from said Indians by the said Flournoy Live-Stock & Real-Estate Company, were never approved by the secretary of the interior, nor the commissioner of Indian affairs, and were absolutely null and void; that the note in suit, and to recover upon which this action is brought, was made, executed and delivered by the defendant to the said Flournoy Live-Stock & Real-Estate Company, in direct violation of the statutes above referred to, and in direct violation of the laws of the United States, whereby in consequence of which, the consideration of said note was and is illegal, and the said

24

Flournoy Live-Stock & Real-Estate Company never acquired any title thereto; all of which was well known to the plaintiff before it acquired possession of said note."

A trial was had to a jury, and after the parties had closed their evidence, the court, on the request of the bank, instructed the jury to return a verdict for the plaintiff. The petition contains forty-five assignments of error which we are asked to examine and pass upon; but as there is one question which, in our opinion, is decisive of the case, we will confine ourselves to that.

The statute set out in the fifth paragraph of the defendant's answer makes any contract touching the lands, for the rental of which the note in suit was given, absolutely null and void. It will not be disputed that a lease of these lands is a contract "touching the same," and it can hardly be doubted that a note given for the rental agreed upon is a part of the same contract. In *Kittle v. De Lamater,* 3 Nebr., 325, 332, it is said: "In law it seems clear that the contract to print and publish the Eureka map and lottery scheme, as alleged in the answer, and the execution of the note by the plaintiff in error to Asher & Adams, must all be taken as one transaction, and as constituting but one contract." The fact that an independent written contract in the form of a note was given by Larson to evidence his agreement to pay rent does not make it the less a contract touching these lands. What was the contract? The Flournoy Company agreed to rent certain lands to Larson; Larson on his part agreed to pay a certain sum as rent therefor. The agreement to lease on one side and the agreement to pay rent on the other were both necessary elements entering into the contract; and the agreement to pay rent, though evidenced by the note, was just as much a part of the contract as though made in any other form. It is true, as urged by the defendants in error, that *Kittle v. De Lamater* has been overruled as to one question decided by a later case, *Smith v. Columbus State Bank,* 9 Nebr., 31, but the point above ruled was not questioned or doubted, nor do we see how it well could be. In *Smith v. Bank, supra,*

it was held that it was no defense to a note in the hands of a bona-fide holder to show that it was founded on an illegal consideration; but in the opinion it is said, quoting from Edwards on Bills of Exchange and Promissory Notes, "There are exceptions to this rule: such as the case of a note given upon an usurious consideration, or for money lost by gambling, such notes and securities being declared by statute to be absolutely void." Where the statute makes a note void, it is not validated by being put in circulation. What the statute makes void never has life or vitality, and never becomes an enforceable contract in the hands of any person. Daniels, in his excellent work, after stating the general rule that as against the bona-fide holder of a note the illegality of the consideration can not be urged as a defense, gives the exceptions to the rule in the following words: "There is, however, one exception to this rule 3; that when a statute, expressly or by necessary implication, declares the instrument absolutely void, it gathers no vitality by its circulation in respect to the parties executing it; though even upon such instrument an indorser may, as we shall hereafter see, be held liable to a bona-fide holder without notice." Daniels, Negotiable Instruments, sec. 197. At section 807 the question is further discussed in these words: "So if the statute law pronounces the contract evidenced by the bill or note to be void, because made upon a gambling, usurious or other illegal consideration, it is an absolute nullity; and, although in form negotiable, no currency in the market, and no degree of innocence or ignorance on the part of the holder can impart any validity to it. But although the party executing such bill or note can not be bound, even to a bona-fide holder, the indorser will be liable upon his indorsement which warrants its validity, and is a separate and independent contract."

The rule that the tenant can not dispute the title of his landlord is urged as an estoppel against the plaintiff in error, and it is insisted that having taken a lease from the Flournoy Company, he ought not to be allowed to show

the invalidity of the title of that company as a defense to the note. There are some cases in the brief of the defendant in error which apparently give countenance to this argument. *Cherokee Strip Live-Stock Ass'n v. Cass Land & Cattle Co.*, 40 S. W. Rep. [Mo.], 107; *Wilcoxen v. Hybarger*, 38 S. W. Rep. [Ind. T. Ct. of App.], 669. We can not agree with the reasoning used in the above cases. If, as congress has declared, this lease was absolutely null and void, we can not comprehend how any right of any kind can be founded on it or grow out of it. How can one claim another as his tenant under an agreement which the law declares shall have no existence, and under which no right or duties of any character can be claimed? *Dupas v. Wassell*, 1 Dill. [U. S. C. C.], 213, and the cases therein cited establish a rule directly contrary to that announced in the cases above cited,—a rule which we think more consonant with reason, and better calculated to an observance of the laws of the country. To allow any right to be founded on a lease of the character of the one in question would be offering a premium to those reckless enough to assume the attitude of landlord over the lands with which the government has forbidden them to deal.

We recommend that the judgment of the district court be reversed and the case remanded with directions to dismiss the same as against the plaintiff in error.

AMES and ALBERT, CC., concur.

By the Court: For the reasons above given, the judgment of the district court is reversed and the cause remanded with directions to dismiss the action.

REVERSED AND REMANDED.