## MINDER, Sheriff, v. FIRST NAT. BANK OF SISSETON, S. D.

Regulations of the Indian Department relating to the sale of allotted land of deceased Indians of the Sisseton band provided that the owners of such inherited lands might petition the Indian agent to have the lands sold, agreeing that the proceeds be deposited in national banks, subject to the check of such heirs for amounts not exceeding $10 to each in any one month, when approved by the agent, and for sums in excess of $10 per month on the approval of the agent only when specifically authorized by the Commissioner of Indian Affairs. **Held,** that the proceeds of the sale of inherited allotted lands, deposited by the Indian agent pursuant to such regulations, and represented by a certificate of deposit, were not subject to an execution issued on a judgment against the Indian selling the land.

Members of the Sisseton band of Sioux Indians allowed to take lands in severalty under the contract between them and the United States are still wards of the government, which had the right to impose such terms and conditions as to the proceeds of the sale of the lands as it might deem proper and. most conducive to the welfare of the Indians.

Fuller, J., dissenting.

(Opinion filed, February 5, 1908.)

Appeal from Circuit Court, Roberts County, Hon. J. H. McCoy, Judge.

Action by J. L. Miller, as sheriff of Roberts county, against the First National Bank of Sisseton, S. D. Judgment for plaintiff, and defendant appeals. Reversed.

*Howard Babcock, James D. Elliot, U. S. Atty.,* and *William G. Porter, Asst. U. S. Atty., of counsel,* for appellant. *J. J. Batterton,* for respondent.

CORSON, J. This is an action instituted by the plaintiff as sheriff of Roberts county to recover of the defendant bank an amount due upon a certificate of deposit issued by said bank, and upon which the said sheriff had levied an execution to satisfy a judgment in favor of one J. A. McKeever against one Titus White for the sum of $958.65. Finding and judgment being in favor of the plaintiff, the defendant has appealed.

It is disclosed by the evidence that Titus White against whom the judgment was recovered in the action of McKeever v. White, was an Indian, and was the father of Damus White, deceased, also an Indian member of the Sisseton band of Sioux Indians in the state of South Dakota; that at the time the said Damus White died he was unmarried, and was an allottee of 120 acres of land in the said Sisseton reservation; that after the death of said Damus White his father, Titus White, to whom all of his property descended, caused the said lands to be. sold under the direction of the Indian agent and the Indian Department, and the proceeds of such sale, amounting to about $1,600, were deposited in the defendant bank in the name of the said Titus White, but subject to the control as to the amount of payment to be made thereon of the agent of the said Sisseton Indians. The complaint was in the usual form, alleging that the sheriff duly levied upon

the certificate of deposit, that he had demanded payment of the sum, and that the defendant had refused to pay the same. The answer of the defendant is very lengthy, setting out in detail the various proceedings resulting in the sale of the property and the deposit of the proceeds of the same in the defendant bank by the Indian agent, and the conditions annexed to the said deposit, together with the various regulations and rules promulgated by the Indian Department in relation to such sales and deposits, but, in the view we take of the case, it will not be necessary to set out the answer in this opinion further than to state that it concluded, in substance, that the said funds arising from the sale of said lands and the said certificate of deposit were and are deposited with the defendant in accordance with the rules and regulations of the Indian Department; that said defendant, a national bank, holds said funds arising from the sale of said land solely as a depository of the United States; that said deposit was received from the United States through its officers by said defendant, and said funds and said certificate of deposit are held by the defendant solely for and subject only to the order of the United States through the officers of the Indian Department; that said White has never received said certificate of deposit or said funds, and is not entitled to the same nor any part thereof, except as specificilly directed by the government of the United States; and that said deposit was received by the defendant from the government as the guardian of said Titus White, to be paid to the said White upon the order of the said United States, in such sum as the said United States through its proper officers might direct.

It is further disclosed by the record that before the trial of said action James D. Elliott, United States attorney, appeared specially in said case and presented and filed written suggestions on the part of the United States, setting forth substantially the same facts as contained in the answer, and which suggestions conclude as follows: "Wherefore, without submitting the rights of the government of the United States to the jurisdiction of the court, but respectfully insisting that the court has has no jurisdiction of the subject in controversy, or of

the interests of the United States therein, he moves that the complaint in the above entitled action be set aside and all the proceedings be stayed and dismissed, and for such other order as may be proper in the premises. James D. Elliott, United States Attorney for the District of South Dakota." No ruling was made by the court upon these suggestions, but the same was reserved until the final decision of the case. At the conclusion of the trial the defendant proposed findings in its favor embodying substantially the facts alleged in its answer, but the court declined to make the proposed findings, and found the facts in favor of the plaintiff upon which the judgment was entered.

The court in its findings, after finding on the preliminary matters, finds in substance that White was the owner of said certificate and the money represented thereby, and that the defendant did, upon the demand of the plaintiff, execute a certificate of deposit for the use and benefit of said Titus White; that the said certificate of deposit and the money represented thereby it the property of said Titus White, and is liable for the payment of said execution; that the United States has no interest whatever in the subject-matter of this controversy; and that its claim and contention in that behalf is wholly without merit. The findings of fact by the court and its conclusions of law thereon, and its refusal to find the facts proposed by the defendant and the conclusions of law based thereon, were duly excepted to. A motion for a new trial was made and denied. The learned circuit court seems to have taken the view that under the law the proceeds of the sale of the land of the deceased Damus White became subject to levy for the satisfaction of the judgment rendered in favor of McKeever against Titus White, and therefore the United States had no right to control or manage the same in behalf of the said Titus White. It will thus be seen that the question presented is, was the money held by the defendant bank for the benefit of Titus White subject to the payment of a prior judgment recovered against him by the said McKeever? Upon a careful review of the evidence we are of the opinion that the facts alleged in the defendant's answer were fully sustained by the same. Mr. Morris, vice president of the defendant bank, a

witness on the part of the plaintiff on cross-examination, testified that said bank had been named as the depository for funds arising from the sale of lands of deceased Indians, and as such had given a bond to the United States in the sum of $25,000 to account for the funds so deposited therein; that the deposit was made by C. B. jackson, the Indian agent at Sisseton agency; and that the conditions were that the same be paid out only upon checks signed by the Indian Titus White, countersigned by C. B. Jackson, agent, and then only in amounts not to exceed $10. This deposit was made by the government, and the bank is accountable to the government for the same. He received instructions from the Indian agent, Major Jackson, relative to this deposit, and about the deposits in general, that the deposits should be paid out from checks issued by the Indian, countersigned by the Indian agent, provided the check was in amount not to exceed $10. Mr. C. B. Jackson, the Indian agent, as a witness on the part of the defendant, testified that the money represented by the certificate of deposit was a part of the proceeds of the sale of the allotted lands to Damus White, the son of Titus White, that the land was advertised for sale according to the provisions of law and rules and regulations of the Indian Department, that he made the deposit according to the rules and regulations governing it as Indian Agent; that he made this deposit to be paid out according to the rules and regulations promulgated by the department; that he could draw $10 per month, and checks should be countersigned by himself as United States agent; that Titus White was the sole heir of Damus White, and was so recognized by the department. The rules and regulations of the department in reference to the sale of allotted land of deceased Indians were introduced in evidence, from which it appears that the proceeds of all such lands are to be retained under the control of the Indian agent, subject to the provisions of such rules and regulations as might be presented by the Indian Department. Among other provisions prescribed by the Indian Department is the following: "(1) Owners of such inherited Indian lands desiring to sell the same may petition the Indian agent or other officer having charge, within whose territorial jurisdiction the land is situated, praying that the land therein described may be

sold under said act in accordance with  the  regulations, and agreeing that the proceeds to be derived therefrom shall be placed in one or more national banks, to be designated by the Commissioner of Indian Affairs, and which said bank shall furnish satisfactory bonds to guarantee the safety of such deposits, to the credit of each heir in proper proportion, subject to the check of such heirs, or, in case of minors, subject to the check of their recognized guardians, for amounts not exceeding ten dollars to each in any one month when approved by the agent or other officer in charge, and only when so approved, and for sums in excess of ten dollars per month upon the approval of such agent only when specifically authorized by the Commissioner of Indian Affairs." It will thus be seen that Titus White, the judgment debtor, was an Indian and a member of the Sisseton Tribe of Indians; that he had inherited the land the proceeds of which were deposited in the bank as heir to his son Damus White; that the sale of the land allotted to the said Damus White was made by permission and under the *direction* of the Indian agent; and that the proceeds arising from such sale was deposited in the defendant bank by the Indian agent as a United States depository, under special instructions of the Indian agent as to the manner in which the same should be paid out upon the check of Titus White in sums not exceeding $10, countersigned by the agent, and that the funds so received for the sale of these lands were retained by the United States in trust for said Titus White. We are of the opinion that the bank was not authorized to turn over said funds to the sheriff, and that it could only pay over said funds in such amount as it should be directed to do by the Indian Department through its authorized agent. These Indians, notwithstanding the fact that they had been allowed to take lands in severalty under the contract between them and the United States are still wards of the government, and the United States  had clearly the right to impose such terms and conditions as to the proceeds from the sale of such lands as it might deem proper and most conductive to the welfare of the Indians.

The Supreme Court of the United States in the recent case of United States v. Ricket, 188 U. S. 432, 23 Sup. Ct. 478,

47 L. Ed. 532, in a case involving the right of the state to tax the property of the Sisseton Indians, speaking by Mr. Justice Harlan, in discussing the rights of these Indians, uses the following language: "These Indians are yet wards of the nation, in a condition of pupilage or dependency, and have not been discharged from that condition. They occupy these lands with the consent and authority of the United States; and the holding of them by the United States under the act of 1887, and the agreement of 1889, ratified by the act of 1891, is part of the national policy by which the Indians are to be maintained as well as prepared for assumming the habits of civilized life, and ultimately the privileges of citizenship. To tax these lands is to tax an instrumentality employed by the United States for the benefit and control of this dependent race, and to accomplish beneficent objects with reference to a race of which this court has said that 'from their very weakness and helplessness, so largely due to the course of dealing of the federal government with them and the treaties in which it has been promised, there arises the duty of protection, and with it the power. This has always been recognized by the Executive and by Congress, and by this court, whenever this question has arisen.'" United States v. Kagama, 118 U. S. 375, 384, 6 Sup. Ct. 1109, 1114. Further along in the opinion of M. Justice Harlan, in answer to a suggestion made by counsel, says: "These suggestions entirely ignore the relation existing between the United States and the Indians. It is not a relation simply of contract, each party to which is capable of guarding his own interests, but the Indians are in a state of dependency and pupilage, entitled to the care and protection of the government. When they shall be let out of that state is for the United States to determine without interference by the courts or by any state. The government would not adequately discharge its duty to these people if it placed its engagements with them upon the basis merely of contract, and failed to exercise any power it possessed to protect them in the possession of such improvements and personal property as were necessary to the enjoyment of the land held in trust for them. Choctaw Nation v. United States, 119 U. S. 1, 7 Sup. Ct. 75. * * * The answer to this

question is indicated by what has been said in reference to the assessment and taxation of the land and the permanent improvements thereon. The personal property in question was purchased with the money of the government, and was furnished to the Indians in order to maintain them on land allotted during the period of the trust estate, and to induce them to adopt the habits of civilized life. * * * It.is for the legislative branch of the government to say when these Indians shall cease to be dependent and assume the responsibility attaching to citizenship." It will thus be seen that the Supreme Court of the United States adheres to the doctrine often announced by that learned court relating to the Indian, that the Indians are wards of the government, and in a state of pupilage, and that Congress is vested with the sole power to determine without the interference of the courts when they shall be emancipated from that condition.

The contention by counsel for the plaintiff that the decision in the Rickert case has been modified if not overruled by the decision of the Supreme Court of the United States in Re Heff, 197 U. S. 488, 25 Sup. Ct. 506, 49 L. Ed. 848, decided by that court in 1905, is not tenable. In that case Mr. Justice Brewer, speaking for the court, says: "But it is said that the government has provided that the Indian's title shall not be alienated or incumbered for 25 years, and has also stipulated that the grant of citizenship shall not deprive the Indian of his interest in tribal or other property; but these are mere property rights, and do not affect the civil or political status of the allottees. In the United States v. Rickert, 188, U. S. 432, 23 Sup. Ct. 478, 47 L. Ed. 532, we sustain the right of the government to protect the lands thus allotted and patented from any incumbrance of state taxation. Undoubtedly an allottee can enforce his right to an interest in the tribal or other property (for that right is expressly granted); and equally clear is it that Congress may enforce and protect any condition which it attaches to any of its grants. This it may do by appropriate proceedings in either a national or a state court. But the fact that property is held subject to a condition against alienation does not affect the civil or political statutes of the holder of the title. Many a tract of land is conveyed with con-

ditions subsequent." It will thus be seen that the Supreme Court of the United States fully approves the decision in the Rickert case, and clearly draws the distinction between the rights of the Indian as a citizen and his property rights.

It would seem to follow that, if Congress should impose as a condition upon the Indians that their land should not be alienated for a period of 25 years, and that the same should not be taxed for state or municipal purposes, it clearly had a right to impose, as a condition on the sale of the allotted lands of a deceased Indian, for the benefit of his heirs, that the proceeds of such sale should be retained by the government, as trustee, exclusively for the benefit of such heirs, and provide that the proceeds should be paid out to them in such manner as might be prescribed by the rules and regulations of the Indian Department. It seems to be the policy of the federal government, in dealing with the Indian seeking to assume the habits of civilized life, to protect them as far as possilbe from their own improvidence and want of forethought in the management of their affairs, and thus to secure to them the benefits resulting to them by the government retaining the control over the proceeds of the sales of their lands in trust for them.

In view of the policy of the federal government in dealing with its Indian wards and the facts as disclosed by the evidence in this case, we are clearly of the opinion that the findings proposed by the defendant should have been adopted by the court, and the conclusions proposed should have been the conclusions of the court upon the facts so found, and judgment rendered in favor of the defendant.

HANEY, P. J. (concurring). In addition to the reasons stated by Judge CORSON, I think the judgment appealed from should be revised, because of the fund levied on was in the possession and under the control of the federal government, and was not subject to attachment or levy, notwithstanding the department regulations under which it was held in trust may have conflicted with the acts of Congress providing for the sale of the land from which it was derived. The material facts are simple and undisputed. Plaintiff held a judgment against White. White had a

claim against the government, and the circuit court attempted to compel the payment of such claim to a creditor of the claimant. Defendant was merely the agent of the government. His possession was its possession. If defendant's notice of this action was notice to the government, the court proceeded without authority, because the United States cannot be summoned as a garnishee. 14 Am. & Eng. Ency. Law, 814. If the government was without notice, it would not be bound by the attachment, and the judgment of the circuit court would afford no protection to the bank. Hence the action should have been dismissed on the motion of the learned United States district attorney, who appeared specially for that purpose.

The judgment and order appealed from are reversed.

FULLER, J. (dissenting). Neither in the reasoning of either of my associates nor in the result of this appeal am I able to concur.