## COLOMBE v. WILSON et al.

Since a contract by an Indian to convey land which the United States holds in trust for him is absolutely void, he need not return any consideration received by him, in order, after securing his final patent, to obtain a decree adjudging that the other parties to the contract have no interest in the land; the rule which requires the return of the consideration applying only where part of the contract is legal.

(Opinion filed, April 2, 1912.)

Appeal froam Circuit Court, Gregory County. Hon. R. B. Tripp, Judge.

Action by John Colombe against J. H. Wilson and others. From a judgment dismissing the plaintiff's complaint, plaintiff appeals. Reversed.

*W. J. Hooper,* for appellant. *M. C. Beck,* for respondents.

CORSON, J. This is an appeal by the plaintiff from a judgment entered by the court, dismissing plaintiff's complaint. The only error assigned is that the court erred in sustaining the demurrer to the reply of the plaintiff to the defendants' counterclaim.

The action was instituted by the plaintiff to determine adverse claims to a quarter section of land in Tripp county. The com-

plaint is in the usual form; the plaintiff alleging his ownership in fee of the premises, and that the defendants claim an interest in the real estate adverse to the title of the plaintiff, and that such claim is without right, and requiring the defendants and each of them to set forth the nature of his or her claim, and demanding that all adverse claims of the defendants and each of them be determined by the court, and that by such decree it be declared and adjudged that the defendants have no estate or interest whatever in or to any part thereof, and that the title of the plaintiff be adjudged good and valid.

To this complaint, the defendants answered, admitting that the plaintiff is the owner of the land described in the complaint, subject to the claims of these defendants, as thereinafter set forth; and the defendants admit that they and each of them claim an interest in said real estate adverse to the title of the plaintiff, but deny that it is without right or title that they make such claim, and, in subsance, allege the facts to be that on the 15th day of January, 1909, the plaintiff entered into a contract in writing, duly signed, witnessed, acknowledged, and recorded, by the terms of which, for a good and valuable consideration, the said plaintiff bargained and agreed to convey the land described in the complaint to these defendants, and that these defendants agreed to purchase said real estate at the price and under the terms and conditions set forth in said contract; a copy of said contract being attached thereto and made a part of the answer.

The contract is in the usual form of a land contract for the conveyance to the defendant by the plaintiff of the premises described in the complaint upon the payment of certain sums therein specified. It is further alleged in the answer that the defendants have fully performed the said contract upon their part to the present time, and stand willing, and have been on their part at all times ready and willing, to perform the conditions of said contract; and they further allege that on the 15th day of January, 1909, in pursuance of said contract and as a part of the purchase price of the real estate described in the complaint, they paid to the plaintiff, in cash, the sum of $500, and that on February 1, 1909, in pursuance of said contract and as part payment on the

same, these defendants delivered to the plaintiff one automobile at an agreed price of $1,600, and that the plaintiff has retained the said sum of $500 and said automobile, and refused to return the same, or any part thereof, and the defendants pray that an accounting may be had, and that upon payment of the amount due by the defendant that specific performance of plaintiff's contract be decreed, and that in case the court shall not decree specific performance of said contract the defendants have judgment against the plaintiff for the sum of $2,100 and interest, and that the same may be decreed by the court to be a specific lien upon said real estate.

To this answer or counterclaim, the plaintiff replied, and, after making certain admissions as to the execution of the contract, payments made, etc., further alleges that he is an Indian by birth and a member of the Rosebud band of Sioux Indians, and alleges that, as such Indian, the land described in the complaint was allotted to him under the act of Congress relative to Indian allotments; such provisions being in part as follows: "That upon the approval of the allotment provided for in this act by the Secretary of the Interior, he shall cause patent to issue therefor in the name of the allottees, which said patent shall be of legal effect and declare that the United States does and will hold the land thus allotted for the period of twenty-five years in trust for the sole use and benefit of the Indian to whom such allotment shall be made, or in case of his decease, of his heirs, according to the laws of the state or territory where such land is located, and at the expiration of such period the United States will convey the same by patent to said Indian or his heirs, as aforesaid, in fee, discharged of said trusts, and free of all charges or incumbrances whatsoever; provided that the President of the United States may in any case in his discretion, extend the period. And if any conveyance shall be made of the land set apart and allotted as herein provided, or any contract made touching the same before the expiration of the time above mentioned, such conveyance or contract shall be absolutely null and void."

Plaintiff further alleges that, pursuant to said act, there was issued to him a trust patent for the land described in the com-

plaint by the Secretary of the Interior, which declared and provided as required by said act of Congress; that, while the plaintiff was holding said land under said trust patent, and not otherwise, in January, 1909, he executed the contract set out in the counterclaim; and that on September 1, 1910, a patent in fee was issued to the plaintiff for said land. Wherefore plaintiff demands judgment as prayed for in his complaint.

To this reply, the defendant interposed a general demurrer, which was by the court sustained, and, the plaintiff electing to stand upon his reply, a judgment, dismissing the complaint, was entered by the court.

It is contended by the respondent, in support of the decision of the court sustaining defendants' demurrer to the reply, in effect, that the action is one in equity, and that the plaintiff, by failing to allege that he had returned to the defendants the money paid him and the automobile received by him or to make any offer to return the same, was not entitled to maintain the action, and that the court was right in sustaining defendants' demurrer to the plaintiff's reply.

The appellant, on the other hand, contends that, as the plaintiff was an Indian, and held his land under a so-called patent of the United States, by which the government retained the title to the land for 25 years, the contract, under the United States statutes, was absolutely null and void, and that in such a case the plaintiff was not required to return, or offer to return, to the defendants the money and property received by him on account of the alleged contract.

We are inclined to take the view that the appellant is right in his contention, and that the facts stated in the reply constituted a complete bar to defendants' counterclaim, and that therefore the court was clearly in error in sustaining the defendants' demurrer to the reply and in dismissing the action.

The nature of the plaintiff's title under his so-called patent, at the time he entered into the contract with the defendants, is clearly stated in the case of United States v. Rickert, 188 U. S. 432, 23 Sup. Ct. 478, in the following words: "The word 'patents,' where it is first used in this section, was not happily chosen

to express the thought which, it is clear, all parts of the section being considered, Congress intended to express.  The 'patents' here referred to, although that word has various meanings, were, as the statute plainly imports, nothing more than instruments or memoranda in writing, designed to show that for a period of 25 years the United States would hold the land allotted in trust for the sole use and benefit of the allottee, or, in case of his death, of his heirs, and subsequently, at the expiration of that period unless the time was extended by the President, convey the fee discharged of the trust and free of all charge or incumbrance.  In other words, the United States retained the legal title, giving the Indian allottee a paper or writing, improperly called a patent, showing that at a particular time in the future, unless it was extended by the President, he would be entitled to a regular patent, conveying the fee.  This interpretation of the statute is in harmony with the explicit declaration that any conveyance of the land, or any contract touching the same, while the United States held the title in trust, should be absolutely null and void.  So that the United States retained its hold on the land allotted for the period of 25 years after the allotment, and as much longer as the President, in his discretion, should determine.  * * *  These Indians are yet wards of the nation, in a condition of pupilage or dependency, and have not been discharged from that condition. They occupy these lands with the consent and authority of the United States; and the holding of them by the United States, under the act of 1887 and the agreement of 1889, ratified by the act of 1891, is part of the national policy by which the Indians are to be maintained, as well as prepared for assuming the habits of civilized life, and ultimately the privileges of citizenship."

It will thus be seen that not only by the act itself, but by the decision of the Supreme Court of the United States, any conveyance of the land, or *any contract touching the same,* while the United States holds the title in trust, is absolutely null and void. The contract, therefore, entered into by the plaintiff, while holding this nominal patent or writing issued by the government, being *absolutely null and void,* is not in any manner binding upon the plaintiff; and therefore he is not required under the law to

return, or offer to return, the money and property received by him as the alleged consideration of the contract, in order to entitle him to a decree under his final patent, issued to him in 1910.

Counsel for the respondents has cited a number of cases in which courts of equity have held that, where a party applies to that court for relief, he must restore, or offer to restore, to the other party all moneys or property received by him as consideration for the contract or conveyance, to entitle him to a judgment or decree of the court canceling such contract or agreement. But in these cases the equitable power of the court was invoked, not primarily to enforce an absolute right, but to call into exercise the discretionary powers of the chancellor. In the case at bar, however, the contract entered into by the plaintiff with the defendants being null and void, he had the absolute right to have the same so declared by the court; and in such a case the court had no authority to impose conditions upon the plaintiff before granting him the relief.

This doctrine is well illustrated in Williams v. Fitzhugh, 37 N. Y. 444, and Browne v. Vredenburgh, 43 N. Y. 195. In the former case, the learned Court of Appeals held, as appears by the second headnote, that: "Where a mortgage has been given upon lands in Ohio to secure the payment of several promissory notes, a part of which are usurious, and a part of which are bona fide, although the mortgage is void, a court of equity will require the complainant to do equity by paying or tendering payment of the valid notes covered by the mortgage before it will entertain a suit to cause the mortgage to be delivered up to be canceled as a cloud upon title," etc. This decision, it will be noticed, was based upon the theory that, as part of the notes secured by the mortgage were valid, it would not enter a decree adjudging the mortgage void, and canceling it, until the plaintiff had paid the amount of the notes that were valid to the defendant.

In the case of Browne v. Vredenburgh, supra, it appears that the action was brought to obtain a reconveyance of a house and lot and a reassignment of certain letters patent which had been conveyed to the defendant's intestate under an agreement.

which was held usurious and void. The plaintiffs in their complaint offered to repay the $1,000, with the lawful interest thereon. The court below, however, gave judgment directing a reconveyance of said house and lot and a reassignment to the plaintiff of the letters patent, without any condition requiring the payment of the $1,000 offered. After the judgment was rendered, the defendant moved for an order requiring plaintiff to carry out the offer contained in the complaint, to pay the $1,000, with interest, which motion was denied, and from such judgment and order of denial an appeal was taken to the General·Term, where the judgment and order were affirmed, and from such judgment an appeal was taken to the Court of Appeals, where the order was again affirmed; all the judges concurring.

It will be observed in that case that the plaintiff had offered to repay the $1,000 paid to them; but the court, in its decree, paid no regard to this offer, but entered a decree directing an unconditional reconveyance of the property to the plaintiffs and a reassignment of the letters patent; that the defendant then moved the court for an order directing the payment of the $1,000 offered to be paid in the plaintiffs' complaint; and that the court refused to require the payment of the $1,000, notwithstanding it had been offered by the plaintiff in his complaint.

The court, in its opinion, after discussing the question as to the validity of the contract, says: "It is very questionable whether, even upon the offer, the court could, under the statute, have required compliance with it and enforced its compliance. In Williams v. Fitzhugh, 37 N. Y. 444, several of the debts secured were valid in their inception, while others were tainted with usury, and all were included in the same security. The court held that the party coming into court, asking a surrender of the security, must do equity in respect to the debts valid in law; the statute only having prohibited a payment on account of the usurious debt as a condition of relief. * * * The agreement here was illegal, and under no circumstances could the money have been recovered by the defendant. In some of the cases, the agreement was void, and was canceled by the court; but the consideration money was recoverable at law, and the chancellor, upon an offer in the com-

plaint, made the payment of it a condition of the relief. Davis v. Duke of Marlborough, 2 Swanston R. 142. And in all there were some elements of equity which can hardly be predicated of an agreement void for usury."

These two cases clearly illustrate the doctrine so often referred to by courts of equity and by counsel in discussing cases of this character, namely, that "he who seeks equity must do equity," or, as sometimes stated, "one who comes into a court of equity must come with clean hands." Clearly, in the case at bar, the plaintiff was not required, in order to have his contract declared null and void under the federal statute, to return to the defendants the money and property they had given him on account of this null and void contract. Had a part of the consideration been valid, the court might have held the reply insufficient until the return, or offer to return, of the valid part of the consideration to the defendants; but the facts set out in the reply constitute a complete bar to the defendants' action and counterclaim. It would seem, therefore, that it is only in cases analogous to that of Williams v. Fitzhugh, supra, where a part of the contract is legal, that the court will impose conditions which must be complied with by the plaintiff before he is entitled to a judgment or decree. The court was clearly in error, therefore, in sustaining the demurrer to the reply and in dismissing the action.

Under the ruling of the trial court in the case at bar, Indians would have but little, if any, protection against the schemes of white men to obtain from them their property. It is a matter of common knowledge that Indians have but little appreciation of the value of or use of money or property allotted to them by the government; and it has been and is the policy of the government to keep the Indians under their control and care, as wards of the nation, until they are sufficiently advanced in civilization to duly appreciate the necessity of securing and holding property for themselves and their children, and to prevent them from being imposed upon or advantage taken of them by their shrewder white neighbors. It is the duty, therefore, of the courts to strictly enforce the laws which Congress has passed, protecting them and their property until such time as they have advanced sufficiently

to protect themselves. Parties attempting to secure property, real or personal, from the Indians are presumed to know that all contracts with them in relation to such property, not properly approved by a government agent, are null and void, and that the return by them of money or property advanced to them on account of such contracts cannot be required from them, as a condition to the enforcement of their rights, where the contract is declared null and void. Minder v. First National Bank, 22 S. D. 14, 114 N. W. 1094; Larson v. Bank, 62 Neb. 303, 87 N. W. 18.

The order of the circuit court, sustaining the defendants' demurrer to the plaintiff's reply, and judgment, dismissing the action, are reversed.

McCOY, P. J., concurs in the result.